Paul J. DAVIS, Petitioner,

v.

R.A. GIELOW, Chairman, United States Railroad Retirement Board, Respondent.

No. 84–1101.

United States Court of Appeals, Tenth Circuit.

Feb. 28, 1985.

David B. Kiker of Morrisard & Rossi, Aurora, Colorado, for petitioner.

Steven A. Bartholow, Deputy Gen. Counsel, Edward S. Hintzke, Asst. Gen. Counsel, Stanley Jay Shuman, Gen. Atty., R.R. Retirement Bd., Chicago, Ill., for respondent.

Before BARRETT and LOGAN, Circuit Judges, and SAFFELS, District Judge.*

---

* Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by desig-

LOGAN, Circuit Judge.

Paul J. Davis petitions for review of the Railroad Retirement Board's decision denying him disability benefits under § 2(a)(1)(iv) of the Railroad Retirement Act, 45 U.S.C. § 231a(a)(1)(iv). Davis served more than twenty years as a railroad switchman. He lost his job with the Chicago, Rock Island and Pacific Railroad in March 1980 when that company went bankrupt. Thereafter he unsuccessfully attempted to obtain work as a switchman with other railroads; at least one rejected him because of his impaired hearing. He then applied for disability insurance benefits under the Railroad Retirement Act. After the Bureau of Retirement Claims turned down his request, he obtained an evidentiary hearing before an appeals referee, who agreed that he was not eligible to receive a disability annuity. In a two to one decision the Railroad Retirement Board denied his appeal, the majority affirming on the basis of the appeals referee's decision. The appeal to us was submitted on the briefs by agreement of the parties.

The factual issue before the appeals referee was whether Davis had a permanent physical condition disabling him from working in his "regular occupation" as a switchman. Although one physician examined Davis for an arthritic condition, the focus of the hearing, and of Davis' appeal to this court, was on his hearing disability. The Railroad Retirement Board's disability standards for hearing require either total deafness in both ears or total deafness in one ear without a hearing aid and hearing of 16/20 in the other ear. *See* Provisional Occupational Disability Rating Schedule, U.S. Railroad Retirement Board, at 5. In denying the benefits the appeals referee relied upon the two medical reports in the record concerning Davis' hearing. One was by K.L. Peacher, M.D., who stated that petitioner suffered from a "moderately severe" hearing loss. Dr. Peacher submitted a letter stating that if Davis had

nation.

taken the routine periodic physical examination for the Rock Island, which was due at approximately the time the railroad ceased operations, the railroad "may" have disqualified him from further work as a switchman because of his hearing problem. A subsequent examination by ear specialist Kenneth A. Rogers, M.D., revealed a 37% hearing loss in the right ear and a 33% loss in the left ear. His binaural impairment was approximately 34%. Although the referee's opinion referred only to 20 C.F.R. §§ 208.9 and 208.11 and not to the particularized hearing impairment standard in the Provisional Occupational Disability Rating Schedule, both the referee and the Board denied that Davis' hearing impairment disabled him.

On appeal Davis complains that the Board has failed to follow Congress' directive to establish uniform standards, consistent with those of the railroads, for purposes of determining disability. 45 U.S.C. § 231a(a)(2) provides that

"the Board, with the cooperation of employers and employees, shall secure the establishment of standards determining the physical and mental conditions which permanently disqualify employees for work in the several occupations in the railroad industry, and the Board, employers, and employees shall cooperate in the promotion of the greatest practicable degree of uniformity in the standards applied by the several employers. An individual's condition shall be deemed to be disabling for work in his regular occupation if he will have been disqualified by his employer for service in his regular occupation in accordance with the applicable standards so established; if the employee will not have been so disquali-

fied by his employer, the Board shall determine whether his condition is disabling for work in his regular occupation in accordance with the standards generally established; and, if the employee's regular occupation is not one with respect to which standards will have been established, the standards relating to a reasonably comparable occupation shall be used."

The Board appears to acknowledge that Davis retains a current connection with the railroad industry and that he has completed twenty years of service. Consequently, he need only establish disability for work in his regular occupation in the railroad industry; the law does not require a showing of an inability to engage in any regular employment. *See* 45 U.S.C. § 231a(a)(1)(iv). Although Davis' impaired hearing condition did not meet the Board's disability standards, at least one railroad characterized his hearing loss as too severe to hire Davis as a railroad switchman.[1] Consequently, the differing standards for disability and employment cast Davis into a legal limbo—he cannot qualify for disability yet neither can he find employment in the industry because of his hearing impairment.

45 U.S.C. § 231a(a)(2) mandates uniform disability standards between the Board and the railroad industry for workers currently employed. Although it does not address specifically the problem of laid-off or former employees attempting to gain reemployment, we believe the thrust of this provision and its legislative history demonstrate Congress' desire to accommodate individuals such as Davis.[2] The Board may not ignore Congress' clearly expressed in-

---

1. Railroad Retirement Board member Chamberlain, who dissented from the Board's decision to deny Davis benefits, emphasized that the duties of a switchman require good hearing in order to hear moving cars and engines. "The inability to hear their approach could produce a life-threatening situation. The MKT [Missouri-Kansas-Texas Railroad] recognized this in their disqualification of Mr. Davis in their employment physical." R. I, 3.

2. The legislative history to 45 U.S.C. § 231a(a)(1)(iv) highlights Congress' desire to confer special treatment on railroad workers with long service in the industry. "Men who have had long service in specialized occupations and then become disabled for work in those occupations are in every practical sense retired; yet under present law they must often eke an existence in destitution for years until they become eligible for an age-retirement annuity." S.Rep. No. 1710, 79th Cong., 2d Sess., *reprinted in* 1946 U.S.Code Cong.Service 1316, 1319.

tent that it apply disability standards consistent with those of private industry. The Board's current regulations appear to tolerate a discrepancy between Board and industry determinations of disability in an employee's regular occupation. *See* 20 C.F.R. § 208.11(a).

Davis has presented sufficient evidence to infer that the Board applies different disability standards than the industry. He has presented evidence that one railroad refused to hire him for his regular occupation because of his hearing disability. Additionally, Dr. Peacher's statement that Davis "may" not have passed his yearly physical had his employer remained solvent, although equivocal, suggests that the Rock Island Railroad applied less stringent hearing disability requirements than the Board's requirements of complete deafness in one ear with substantial impairment in the other.

The appeals referee's decision did not consider the apparent discrepancy between the Board's standards and the statute. Indeed, the referee may not consider such a legal question, but must apply the regulation. *See School Board v. Department of Health, Education & Welfare,* 525 F.2d 900, 908 (5th Cir.1976). The Board's opinion also did not treat the point, but merely adopted the referee's decision as its own. The only possibly relevant comment in the opinions is the referee's statement that "pre-employment hiring practices are frequently much more rigid and exacting than practices or standards allowing a 20 year employee to stay on a job." R. I, 11. That is not a justification, but only an observation. We believe the Board is obligated to explain why its standards are more stringent than those applied by the railroad industry in hiring or retaining employees with over twenty years of experience. We reverse the Board's determination denying Davis disability benefits and remand to the Board for further proceedings. On remand we expect the Board (1) to demonstrate that it is applying the railroad industry's prevailing standards to disability determinations in this case, or (2) to show that

Davis' impairment is not disabling under railroad industry standards, or (3) to grant Davis a disability annuity because of his hearing impairment.

REVERSED AND REMANDED.