## The SCHOOL BOARD OF BROWARD COUNTY, FLORIDA, Plaintiff-Appellee,

v.

## DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, UNITED STATES OFFICE OF EDUCATION, Defendant-Appellant.

### No. 74–3606.

United States Court of Appeals, Fifth Circuit.

Jan. 7, 1976.

Robert W. Rust, U. S. Atty., Miami, Fla., J. Stanley Pottinger, Asst. Atty. Gen., Dept. of Justice, Brian K. Landsberg, Marie E. Klimesz, Attys., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Shaw, Marko, Stephany & Lyons, Edward J. Marko, Ft. Lauderdale, Fla., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

We have before us for review an administrative finding that the School Board of Broward County, Florida, was ineligible for federal aid under the Emergency School Assistance Program (ESAP) at the time an ESAP grant was made, and an order pursuant to that finding requiring the County to repay to the Department of Health, Education and Welfare all monies paid out under that grant. The district court determined that there was insufficient evidence to support the administrative finding, since that finding was based entirely on hearsay evidence. We reject the reasoning of the district court, and hold that there was sufficient evidence to support the administrative finding. Termination of the grant was therefore proper. We conclude, however, that the administrative order requiring the County to repay all sums paid out under the grant is not properly before us for review, and therefore pretermit discussion of that issue.

The Emergency School Assistance Program was established by Public Law 91–380, to aid local educational agencies in the process of desegregation.[1] The appropriation contained a limitation, however, providing that

> no part of the funds contained herein shall be used . . . to assist a local educational agency which engages, or has unlawfully engaged, in the gift, lease or sale of real or personal property or services to a nonpublic elementary or secondary school or school system practicing discrimination on the basis of race, color, or national origin; . . .

P.L. 91–380, 84 Stat. 804. It is this limitation which created the present dispute.

The School Board of Broward County applied for assistance under the ESAP program on August 10, 1971, and a grant in the amount of $1,737,000 was awarded to the school board on September 1, 1971.[2]

On December 6, 1971, the Office of Education of the Department of Health, Education and Welfare notified the school board that its 1971–1972 ESAP grant was subject to termination because of the board's failure to comply with certain assurances made in its application

---

1. As stated in 45 CFR § 181.2, the purpose of the emergency school assistance program is

   to meet special needs during the 1971–72 academic year incident to the elimination of racial segregation and discrimination among students and faculty in elementary and secondary schools . . .

2. This grant was not pursuant to P.L. 91–380, which applied only to the fiscal year ending June 30, 1971, but rather pursuant to P.L. 92– 38, 92–71, 92–139, 92–162, and 92–201, under a series of continuing resolutions. We note that those continuing resolutions did not expressly contain the limitation found in P.L. 91– 380 with regard to aid to educational agencies which had sold property to private discriminatory schools. We are persuaded by the legislative history of the continuing resolutions that Congress fully intended to continue their previous policy found in the express limitation.

for ESAP funds. Those assurances stated that (1) the school board had assigned its teachers so that the ratio of minority to nonminority teachers in each school is substantially the same as the ratio that exists in the faculty of the school system as a whole, as required by 45 CFR § 181.6(a)(4)(vi) and (2) the school board had disclosed all transfers after May 27, 1968, of property or services to any private school, as required by 45 CFR § 181.6(a)(4)(iv)(a).

HEW further stated in its notification it would seek a determination that the school board was ineligible *ab initio* under the ESAP program, because it had sold school property to four private discriminatory schools. Since we conclude that this was a sufficient basis for termination of the grant, we find no reason to address the issues of teacher assignment and the school board's failure to list property transfers in its ESAP application.

The hearing examiner after a full hearing, found in pertinent part that the school board had transferred property to Lakeview Christian School, Gold Coast Christian School, Dade Christian School and Central Baptist School, and that at the time of hearing and the time of transfer those four schools all practiced discrimination on the basis of race. The hearing examiner concluded that, as a result of such transfers, termination of financial assistance under ESAP was required. He further concluded that since the school board was ineligible for assistance at the time of its application, the school board must repay all funds received under the ESAP grant.

On appeal to the Commissioner of Education, the findings of the hearing examiner were affirmed with regard to Lakeview Christian School, Gold Coast Christian School and · Dade Christian School. The finding with regard to Central Baptist School was reversed, on the ground that there was insufficient evidence establishing that the sale of property was to the school, rather than the church located on the same premises. The order of the hearing examiner requiring termination and repayment was affirmed in full.

■ As required by regulations, 45 CFR § 181.15(b)(2), the initial hearing was held pursuant to the Administrative Procedure Act, 5 U.S.C.A. § 554–557. The scope of our present review is likewise governed by that Act, 5 U.S.C.A. § 706, and is limited. Under the Act, we may set aside agency findings only when, *inter alia*, they are arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence. 5 U.S.C.A. §§ 706(2)(A), 706(2)(E).

■ Substantial evidence is evidence that affords a substantial basis of fact from which the fact in issue can be reasonably inferred. *Watson v. Gulf Stevedore Corp.*, 5 Cir. 1968, 400 F.2d 649. Other general statements as to the meaning of "substantial evidence" can be found,[3] but these do not materially aid the present analysis.

■ The school board does not question the fact that sales to private schools were made. However, the board argues that HEW failed to introduce substantial evidence establishing the discriminatory practices of those private schools at the time of sale. The district court, in reversing the decision of the Commissioner of Education, agreed with the school board and found that the hearing examiner's conclusion that the school board made sales of equipment to schools which discriminated on the basis of race or national origin was unsupported by substantial evidence because: (1) there

---

**3.** "Substantial evidence is 'more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established.' 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury." *Rivas v. Weinberger*, 5 Cir. 1973, 475 F.2d 255, *citing Breaux v. Finch*, 5 Cir. 1970, 421 F.2d 687.

was no substantial evidence to show that the three schools discriminated at the time of sale [4] and (2) the evidence before the hearing examiner was purely hearsay, and as such could not constitute substantial evidence. We conclude that hearsay, standing alone, under proper circumstances may constitute substantial evidence in an administrative proceeding, and that substantial evidence exists in the present record to support the findings of the Commissioner of Education.

■ At the outset, we note that no question is raised as to the admissibility of hearsay evidence in an administrative proceeding. It is settled that the use of hearsay is proper. *Cohen v. Perales*, 5 Cir. 1969, 412 F.2d 44, *rev'd on other grounds*, 1970, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842. However, the mere admissibility of such evidence does not answer the question of when and under what circumstances hearsay can constitute substantial evidence.

In determining that, as a matter of law, hearsay cannot constitute substantial evidence, the district court relied primarily on the statement in *Consolidated Edison Co. v. NLRB*, 1938, 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126, that

mere uncorroborated hearsay or rumor does not constitute substantial evidence.

This principle, known as the residuum rule, requires a reviewing court to set aside an administrative finding unless the finding is supported by some evidence which would be admissible in a jury trial. Under this rule, the legal character of the evidence as hearsay is determinative; no consideration is given to the reliability of the evidence or the circumstantial setting in which it arises. *See* K. Davis, 4 Administrative Law Treatise § 14.10, at 292 (1958). The school board urges us to reaffirm this rule, and to hold that, regardless of probative value, hearsay alone may never constitute substantial evidence.

Neither the district court nor the school board considered the effect of *Richardson v. Perales*, 1970, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842, on the continuing vitality of the residuum rule. *Perales* was a social security benefits case in which the plaintiff had been denied disability benefits on the basis of sworn affidavits of treating physicians. When *Perales* was before this Court, *Cohen v. Perales*, 5 Cir. 1969, 412 F.2d 44, we analyzed in depth the judicial treatment of the residuum rule, and concluded in accord with *Consolidated Edison, supra*, that mere uncorroborated hearsay or rumor cannot constitute substantial evidence. On petition for rehearing, 416 F.2d 1250, we made clear our position:

Our opinion holds, and we reaffirm, that mere uncorroborated hearsay evidence as to the physical condition of a claimant, standing alone and without more, in a social security disability case tried before a hearing examiner, as in our case, is not substantial evidence that will support a decision of the examiner adverse to the claimant, if the claimant objects to the hearsay evidence and if the hearsay evidence is directly contradicted by the testimony of live medical witnesses and by the claimant who testify in person before the examiner, as was done in the case at bar. This is especially true if the claimant requests that the absent medical witnesses of the HEW who authored the hearsay evidence, be subpoenaed to testify at the hearing and the examiner fails or refuses to summon them.

We noted, however, that where these conditions were not present, nothing would prevent an examiner from basing his opinion on hearsay evidence, if such evidence had sufficient probative force to support the decision. At least some crack in the residuum rule was recognized.

Mr. Justice Blackmun, in reversing the decision of this Court, widened the crack

4. The district court concluded that the evidence in the record showed a pattern of discrimination existing at the time of the hearing, rather than several months before at the time of the sales.

and undermined the rationale behind the rule. The rule is predicated upon the assumption that an absolute determination that incompetent evidence may never support a finding is superior to case-by-case determinations of whether particular incompetent evidence may, under the circumstances of the case, be deemed sufficiently trustworthy to support the finding in question. K. Davis, Administrative Law Treatise § 14.10, at 292 (1958). The quoted sentence from *Consolidated Edison* was interpreted by the Court not to be a blanket rejection of administrative reliance on hearsay irrespective of reliability and probative value as required by the rule, but rather the opposite, a rejection of only hearsay "without a basis in evidence having rational probative force." 402 U.S. at 407, 91 S.Ct. at 1430.

The Court proceeded to analyze certain factors which gave the hearsay probative force: (1) the out-of-court declarants had no bias or interest in the outcome; (2) the reports were available prior to the hearing, and the claimant could have subpoenaed the out-of-court declarants; (3) there was no inconsistency on the face of the reports; (4) written medical reports by treating physicians have an inherent reliability and probative worth long recognized by the courts. The Court concluded that, even though there existed direct, contradictory evidence, the hearsay reports constituted substantial evidence.

■ Based on the Supreme Court's approach in *Perales*, we must reject any per se rule that hearsay cannot constitute substantial evidence. Rather, we must look to those factors which "assure underlying reliability and probative value," 402 U.S. at 402, 91 S.Ct. at 1428, to

determine whether the hearsay in the present case constitutes substantial evidence.[5]

After considering the administrative record in depth, we agree with the School Board that certain portions of the record consists of nothing more than rumor and opinion on the part of unidentified out-of-court declarants. Such evidence is to be given little weight, and would not constitute substantial evidence in the present record. *McKee v. United States*, 1974, 500 F.2d 525, 205 Ct.Cl. 303. However, other hearsay evidence in the record carries special indicia of probativeness and trustworthiness, and, when considered in light of facts unique to this case, leads to a conclusion that substantial evidence supports the hearing examiner's findings.

■ We particularize. HEW asked the school board to prepare a questionnaire relating to discriminatory practices to be answered with respect to various private schools. The school board sent a teacher employed by it to Lakeview Christian School to complete the questionnaire. The returned questionnaire stated that the school "will not accept black." This conclusion was drawn by the school board's own agent. Since the school board never challenged the statement by examining the teacher who prepared the questionnaire,[6] we must conclude that it has some degree of trustworthiness.

One of the witnesses at the administrative hearing was a member of the biracial committee appointed by the district court pursuant to its desegregation order. Under the ESAP regulations, the biracial committee had to approve and review the school board's ESAP proposals before funds could be authorized.

---

5. Other courts have interpreted *Perales* in a similar manner, as requiring an analysis of the truthfulness and credibility of the hearsay as compared to contrary evidence, in determining whether it constitutes substantial evidence. *See, e. g., McKee v. United States*, 1974, 500 F.2d 525, 205 Ct.Cl. 303; *Reil v. United States*, 1972, 456 F.2d 777, 197 Ct.Cl. 542; *Henley v. United States*, M.D.Penn.1974, 379 F.Supp. 1044.

6. 5 U.S.C.A. § 555(c) provides that "[p]rocess . . . or other investigative act or demand may not be issued, made, or enforced except as authorized by law." Neither the ESAP appropriation, the regulations, nor the underlying statutes authorized issuance of subpoenas for third party witnesses in the administrative proceedings, and thus HEW did not have the power to bring the teacher who answered the questionnaire before the hearing examiner.

The committee members thus sit in an impartial position with regard to ESAP. This witness testified that she had visited Gold Coast School and spoke with the principal, who personally informed her that they did not accept blacks.

■ Another witness had a younger brother and sister enrolled in Dade Christian School, and was concerned about the school's segregated policy. She spoke with a school official in the admissions office, who informed her that the school did not have an open admission policy with respect to race. On another occasion, she went to the school and spoke with the receptionist, who informed her that the school had a policy of nonintegration. The receptionist also gave her a card which had printed on it the school's policy of nonintegration.[7] The fact that this witness had no interest with respect to the present controversy, together with the unrefutable documentary evidence given to her, make her testimony both trustworthy and probative.

■ Direct evidence as to the discriminatory nature of the private schools was unavailable. The only individuals who could testify directly as to the admissions policies of the schools were the officials of those schools. Since HEW did not have subpoena power, see footnote 6, supra, those officials could not be made to appear. The inability to procure direct testimony, although it does not increase the probative force of the hearsay introduced, does demand that we be more flexible by allowing an administrative determination to rest on the only available evidence. *Willapoint Oysters, Inc. v. Ewing*, 9 Cir. 1949, 174 F.2d 676, 691.

■ The hearsay evidence utilized was uncontradicted by the school board. As noted above, this court's rejection of hearsay as substantial evidence in *Perales* was based in large measure on the fact that it was directly contradicted by the testimony of live medical witnesses and the claimant. We noted on rehearing that absent such direct contradictory evidence, hearsay could be relied upon. 416 F.2d at 1251. The decision of the Supreme Court did not alter this aspect of our opinion. We find that the absence of contradictory evidence in the present record goes far towards supporting a finding that the hearsay constitutes substantial evidence.

The school board argues that even if there exists substantial evidence that the private schools have discriminated, such evidence establishes the fact of discrimination only at a time subsequent to the board's sale of property. Thus, they assert there is no substantial evidence of discrimination at the time of sale.

■ This argument is without merit. First, although most of the evidence introduced pointed to discrimination subsequent to the sales, there was some evidence, albeit hearsay, that at least two of the schools discriminated at the time of sale.[8] Second, the time period involved is small.[9] Third, there was no evidence that the discriminatory policies of the schools was of recent

7. The card given to her read as follows:

   DADE CHRISTIAN SCHOOLS
   6601 N.W. 167th Street
   Hialeah, Florida 33015

   We are very sorry  .  .  ..
   But the policy of the school is one of non-integration and we would request that you respect this policy.

   School Administration

8. Mr. Clements, coordinator for the Office of Civil Rights, Education Branch, for Florida, North Carolina and Kentucky, testified that he went to Lakeview School and spoke with Rev. Callap, who identified himself as principal of the school. Rev. Callap told Clements that Lakeview School had *never* accepted blacks. Rev. Callap also informed Clements that during 1970–71, when the sales took place, he was an employee at Dade Christian School, and that it was the policy of the school at that time not to accept blacks.

9. Most of the evidence pointing to a discriminatory policy related to the time period of November, 1971 to January 12, 1972, the date of the hearing. The sales took place between October 20, 1970 and June 22, 1971. Thus, the time differential between proof of discrimination and sale ranges from five to fifteen months.

vintage.[10] Fourth, and perhaps most important, HEW could not directly establish the discriminatory policies of the schools at an earlier point in time primarily because of the school board's failure to list in their ESAP application private schools to whom they had made sales, as required by the ESAP regulations, 45 CFR § 181.6(a)(4)(iv)(a). Had such disclosure been made, HEW could have properly investigated to determine whether those schools discriminated before making the grant.

In determining whether evidence of a subsequent condition may be utilized to establish its prior existence, we must consider both the time period which has elapsed, the nature of the fact to be established, and the likelihood of a change in that fact during the time interval. See Manning v. New York Telephone Co., 2 Cir. 1968, 388 F.2d 910; F. W. Woolworth Co. v. Seckinger, 5 Cir. 1942, 125 F.2d 97; 2 Wigmore, Evidence § 437 at 413 (1940). Here, we find it highly probable that a discriminatory policy which existed at or about the time of the hearing also existed some five to fifteen months before. This conclusion is bolstered by the fact that there is some corroborative evidence and no contradictory evidence.

Finally, we must consider the order of the hearing examiner, affirmed by the Commissioner of Education, requiring the school board to repay all sums which it had received under the grant.[11] The government argues that since the school board was ineligible under the statute, P.L. 91–380, and the regulations, 45 CFR § 181.3(a)(4), at the time the grant was made, the Commissioner had no power to disperse funds to the school board, and therefore the government is entitled to repayment of all sums dispersed.[12] We decline, however, to reach this issue.

A review of the applicable regulations reveals that the power of the hearing examiner is limited to the single issue of termination.[13] Although the hearing examiner noted in his opinion that the school board received a full and fair hearing on "the question of termination of its ESAP grant *and related issues*" we find no authority giving that officer the power to decide such "related issues."

An administrative agency is bound by its own regulations. United States v. Joseph G. Moretti, Inc., 5 Cir. 1973, 478 F.2d 418, 425. So too, a hearing examiner is bound by the authority vested in him by regulation or statute. He is not free to decide other "related issues." We will not permit a hearing examiner, when acting pursuant to valid regulations, to decide questions of fact or law neither expressly nor impliedly

10. The school board established that at least two of the schools had the benefit of tax-exempt status, and that this fact tends to establish that the schools did not discriminate at the time of sale. However, other evidence pointed out that the IRS policy of refusing tax-exempt status to private schools which discriminated was relatively new, that the tax-exempt status of these schools had not been confirmed subsequent to this new IRS policy, and that the tax-exempt status of these schools was under IRS review. In light of this evidence, we conclude that the tax-exempt status of the schools, while perhaps relevant, does not mandate a conclusion that they did not discriminate at the time of sale.

11. It appears from the record that approximately $600,000 of the $1,737,000 grant was paid to the school board prior to the suspension of payments.

12. We have, in other circumstances, recognized a common law right on the part of the government to recoup funds improperly paid out. See Mount Sinai Hospital v. Weinberger, 5 Cir. 1975, 517 F.2d 329.

13. 45 CFR § 181.15(b)(2) provides in pertinent part:

Hearings respecting the *termination of assistance* pursuant to this section shall be conducted pursuant to the provisions of the Administrative Procedure Act . . . (emphasis added)

45 CFR § 181.15(b)(3) provides in pertinent part:

The initial decision of a hearing examiner regarding the *termination of a grant* under the program shall become the decision of the Commissioner without further proceedings unless there is an appeal to, or review on the motion of, the Commissioner . . . (emphasis added)

required by those regulations. Any such determination is a nullity.

Therefore, we conclude that the order of the hearing examiner requiring repayment, since not within the power conferred upon him by regulation, is void, and not properly before us for review.[14] With respect to that portion of the order requiring termination, the decision of the district court is reversed, and the order is reinstated.

Reversed.

14. In so holding, we note that the regulations specifically give the Commissioner the authority to pursue any remedy authorized by law. 45 CFR § 181.15(c).