550

Merrimack
No. 84-492
Hillsborough
No. 85-094

THEODORE MOODY
v.
MICHAEL CUNNINGHAM, WARDEN

THE STATE OF NEW HAMPSHIRE
v.
BRIAN DANEAULT

January 6, 1986

*Stephen E. Merrill*, attorney general (*Ronald F. Rodgers*, assistant attorney general, on the brief and orally), for the defendant, Michael Cunningham, and for the State.

*James E. Duggan*, appellate defender, and *Joanne Green*, assistant appellate defender, of Concord (*Ms. Green* on the brief, and *Mr. Duggan* orally), for the petitioner, Theodore Moody.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant Brian Daneault.

KING, C.J.   In these cases, consolidated on appeal, we must decide whether use of an untried indictment as the sole evidence in a hearing for revocation of parole or imposition of a suspended sentence violates the due process standards established in *Stapleford v. Perrin*, 122 N.H. 1083, 453 A.2d 1304 (1982). We hold that evidence of an untried indictment by itself is insufficient to satisfy the State's burden of proof and that due process requires the State to present some evidence of the underlying violation through testimony of a witness who can be cross-examined, unless the hearing officer specifically finds good cause for denying confrontation.

The record indicates that Theodore Moody was paroled in July, 1981. On May 25, 1984, he was indicted on various drug-related charges for which he had been arrested a few days earlier. Moody's parole officer, Daniel Fowler, subsequently filed a Complaint of Violation of Parole alleging that Moody's arrest and indictment were in violation of his parole agreement. The specific conditions implicated were that Moody would "conduct [himself] as a good citizen" and would abstain from the use or sale of narcotic or controlled drugs.

At the parole revocation hearing held on July 20, 1984, the only evidence presented of the alleged violations was testimony by Fowler, over Moody's objection, that Moody had been arrested and indicted on the drug charges. It is unclear whether copies of the indictments were given to the parole board or whether Fowler merely testified regarding the indictments. Finding that Moody had violated his parole agreement, the parole board revoked Moody's parole and recommitted him to the State prison for six years, four months and eight days. That December, Moody pleaded guilty to the new drug charges and was ordered to serve 7-1/2 to 15 years concurrent with the remainder of the sentence imposed by virtue of the parole revocation. The earliest release date on the new sentence is November, 1991, which is beyond the maximum release date of the original sentence.

In August, 1984, Moody filed a petition for a writ of habeas corpus in the superior court, alleging that he was denied his right to confront and cross-examine adverse witnesses at the parole revocation hearing and that the parole board's decision, based on Fowler's complaint, was not supported by a preponderance of the evidence. The Superior Court (*Bean*, J.) denied Moody's petition, finding that he "was given the opportunity to confront and cross-examine the witness that presented the evidence of the issuance of the indictments." This appeal followed.

In the Daneault case, the defendant pleaded guilty to possession of a narcotic drug on July 2, 1984, at which time the Superior Court (*Dalianis*, J.) imposed a fine of $1,000, $250 of which was suspended upon "good behavior," payable to the probation department within one year. In addition, the court sentenced Daneault to six months' confinement in the house of correction, "suspended upon payment of the fine and good behavior." Daneault was placed on probation solely for collection of the fine. In December 1984, the State moved to impose the suspended sentence on the grounds that Daneault had been arrested for the sale of a controlled drug and had failed to comply with the fine payment schedule.

At the February, 1985 hearing on the State's motion, the State asked the court to take judicial notice of Daneault's indictment in

January, 1985 for sale of a controlled drug, arguing that by virtue of the indictment Daneault had not been of good behavior. The Superior Court (*Dalianis*, J.) found that there had been no violation of probation because the full time for payment had not elapsed. The court, however, took judicial notice of the indictment and granted the motion to impose the suspended six-month sentence, stating that "when I say good behavior, I mean that a person is to remain arrest-free and if he gets arrested I don't think he's been of good behavior." Daneault served four months in the house of correction and was released in March, 1985 on his minimum release date. He appeals the court's imposition of the suspended sentence.

██ As a preliminary matter, we must address the State's contention that these appeals are moot. It cannot be gainsaid that neither Moody nor Daneault will realize a tangible benefit by a decision in his favor, since Daneault is no longer incarcerated and Moody is serving a concurrent sentence for another crime. Yet this court is not bound by rigid rules in determining whether an appeal is moot; rather, the question of mootness is a matter of convenience and discretion. *Hood & Sons v. Boucher*, 98 N.H. 399, 401, 101 A.2d 466, 468 (1953). Where, as here, the parties raise significant constitutional issues, there is a public interest which militates in favor of our rendering a decision on the merits. *See Royer v. State Dept. of Employment Security*, 118 N.H. 673, 675, 394 A.2d 828, 829 (1978); *Proctor v. Butler*, 117 N.H. 927, 930, 380 A.2d 673, 674–75 (1977).

██ Hearings for parole violations or imposition of a suspended sentence "may culminate in a deprivation of an individual's most precious freedom—his personal liberty." *Proctor v. Butler supra.* Although the interest in continued liberty is conditional, both the State and the defendant have a strong interest in seeing that liberty is not withdrawn except by proceedings that comport with due process. The identity of issues in *Moody, Daneault* and a third case, the appeal of which was deferred pending this decision, indicates that uncertainty exists in the application of the procedural safeguards of *Stapleford.* We find, therefore, that these cases present issues of public interest which justify our reaching the merits of the appeals.

██ Both Moody and Daneault contend, and the State concedes, that it was error for the parole board and judge to base their respective determinations solely upon evidence that the defendants had been indicted for, but not convicted of, certain criminal charges. In order to incarcerate a defendant for violation of a condition of parole or a court-imposed condition, the State must prove by a preponderance of the evidence that the defendant violated that condition. *Stone*

*v. Shea*, 113 N.H. 174, 176, 304 A.2d 647, 648 (1973). The State may satisfy its burden in one of two ways: by establishing the fact of a criminal conviction for the acts which constitute the violation or by proof of the commission of the underlying acts. An indictment represents the conclusion of a grand jury that probable cause exists to believe that a defendant has committed a particular crime. *State v. Kellenbeck*, 124 N.H. 760, 765, 474 A.2d 1388, 1391 (1984). It is an accusation which, at best, is hearsay evidence of the underlying acts. If the fact of an indictment were sufficient to revoke parole or impose a suspended sentence, then the parole board or judge would be relegated to the essentially ministerial function of determining whether the defendant had in fact been indicted. Clearly, this is not the type of factual inquiry contemplated in *Stapleford*. In the absence of a criminal conviction, the fact-finder must make an independent determination that the defendant committed the alleged violations.

The State suggests that had the sentencing court or parole board imposed a condition that the defendant remain indictment-free, the State would meet its burden of proof at the hearing by proving its prima facie case for the indictment. The defendants respond that this standard, which includes no limitations on the use of hearsay, in effect would make an *ex parte* accusation conclusive of parole violation. We agree.

In *Stapleford v. Perrin*, 122 N.H. 1083, 453 A.2d 1304 (1982), we enumerated the due process requirements for proceedings which may result in a significant deprivation of liberty, including hearings for parole revocation and imposition of a suspended sentence. We noted that in such proceedings, "the only inquiry is usually whether the defendant has been of good behavior or has in some way violated the terms of his freedom." *Id.* at 1089, 453 A.2d at 1307. The procedural protections of *Stapleford* help to ensure that the fact-finder will make an accurate determination on the basis of reliable evidence and verified facts. *See Morrissey v. Brewer*, 408 U.S. 471, 487 n.9 (1972). The use of live testimony, tested by confrontation and cross-examination, is the time-honored method for achieving this result.

Defendant Moody argues that under the New Hampshire Constitution, due process mandates an absolute right to confront and cross-examine adverse witnesses. In support of this contention, he notes that in *Stapleford* this court did not adopt *verbatim* the due process requirements set forth in *Morrissey v. Brewer supra. Morrissey* states that at a parole revocation hearing, the defendant has "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing

confrontation)." *Id.* at 489. In *Stapleford v. Perrin*, the list of due process protections includes the right to confront and cross-examine adverse witnesses but does not include the quoted parenthetical language which limits that right. Thus, it is argued, under New Hampshire law, not even a finding of good cause will suffice to deny the right to confrontation.

We believe that the content of the right to confront and cross-examine adverse witnesses can best be defined by reference to the nature and purpose of the fact-finding hearing. The due process protections accorded a defendant who stands to lose his conditional liberty represent a compromise between the need for accurate determinations of fact and the State's interest in being able to imprison a defendant without an adversarial trial when that defendant has violated a condition of his liberty. The fact-finding process should be flexible enough to consider depositions, affidavits and documentary evidence not admissible at trial. Nonetheless, where critical decisions turn on questions of fact, the importance of the right to confrontation should not be underestimated or ignored. *People ex. rel. McGee v. Walters*, 62 N.Y.2d 317, 322, 465 N.E.2d 342, 344 (1984).

To conclude that the State may meet its burden of proof entirely by use of hearsay or substitutes for live testimony without regard for the right to confrontation would eviscerate the due process protections of *Stapleford*. Yet an absolute rule requiring at least some opportunity to confront and cross-examine the sources of hearsay evidence would grant greater protection to those who may be deprived of conditional liberty than is granted defendants in criminal trials. As a general rule, then, there must be a strong preference for confrontation and cross-examination which may be abrogated only upon a specific finding of good cause for denying confrontation.

In the instant proceedings, the State introduced no direct evidence of the defendants' conduct. Because the parole board and the superior court made their determinations solely on the basis of indictments, the use of which denied the defendants the right to confront and cross-examine the persons who originated the factual information, we hold that the procedures followed denied Moody and Daneault due process of law. Accordingly, we reverse both committal decrees.

*Reversed.*

JOHNSON, J., did not sit; the others concurred.