# Brian Watker v. Vermont Parole Board

[596 A.2d 1277]

No. 89-083

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed May 24, 1991

Motion for Reargument Denied June 20, 1991

*Walter M. Morris, Jr.*, Defender General, and *Jeffrey Dworkin*, Prisoners' Rights Office, Montpelier, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Thomas J. Rushford*, Assistant Attorney General, Waterbury, for Defendant-Appellee.

**Morse, J.** This appeal from a superior court judgment upholding a parole board decision finding plaintiff in violation of

parole conditions and imposing new conditions causes us to reevaluate the standard of review. We reject plaintiff's claims that the board's ruling was not supported by substantial evidence and that his right to confrontation of witnesses was violated during the revocation hearing, and we therefore affirm.

On July 20, 1988, the Vermont Parole Board held a hearing to determine whether plaintiff violated two conditions of parole: (1) committing an act punishable under law, and (2) failing to lead an orderly and industrious life. The factual basis for the alleged violations was that plaintiff assaulted his cohabitant, Vicki Magoon, while they were living at 14 Foster Street, Barre, Vermont. The State's evidence consisted of a police officer's affidavit and testimony from a parole officer. Plaintiff testified on his own behalf.

The parole officer testified that he received the affidavit from the police officer. The affidavit stated that at about 1:15 a.m. on June 17, 1988, a dispatcher received two complaints about a couple fighting on Foster Street. When the officer arrived in the area, he found Magoon, who was eight-and-one-half-months pregnant, walking barefoot down Granite Street in the rain, while carrying a one-and-one-half-year-old child in her arms. Magoon was taken to the police station, where the officer observed a circular welt on her left cheek as well as scabbing and contusions extending around the front of her neck. An officer examined her back and found multiple bruise marks. Magoon stated that plaintiff had beaten her. The officer then went to 14 Foster Street and found plaintiff in bed. Plaintiff told the officer that he had been asleep all evening.

Plaintiff testified that he had reviewed his parole officer's report and the investigating officer's affidavit. He denied attacking Magoon and stated that she had been with a friend, Diane Gaylord, on the night of the incident, while he was at home in bed. He also testified that Magoon had visited his lawyer, Robert Paolini, and had told him that her allegation of assault that night was untrue. Plaintiff, however, did not call Magoon, Gaylord, or Attorney Paolini as witnesses at the parole violation hearing. Following plaintiff's testimony, the parole officer testified that he also interviewed Magoon and she had told him that plaintiff had beaten her.

The parole board found that plaintiff had violated the conditions of his parole as alleged. He sought review in the superior

court under V.R.C.P. 75, arguing that the board's conclusion was not based on "sufficient, competent evidence." The superior court concluded that the hearsay evidence combined with the board's determination to "totally reject . . . [plaintiff's] testimony" was sufficient to allow revocation of parole. It also found that plaintiff had not raised his constitutional right of confrontation below and therefore declined to consider it on appeal.

## I. Substantial Evidence

■ The parole board may continue or revoke parole if "the alleged violation is established by substantial evidence." 28 V.S.A. § 552(b)(2). This Court has stated that "mere uncorroborated hearsay does not constitute substantial evidence" sufficient to support an administrative adjudication. *Baxter v. Vermont Parole Board*, 145 Vt. 644, 648, 497 A.2d 362, 365 (1985). In *Baxter*, we held that the parolee's failure to testify— that is, his silence in the face of hearsay charges—supplied the corroboration or substantial evidence needed to support a parole violation. *Id.* at 648–49, 497 A.2d at 365; see also *State v. Schroeder*, 149 Vt. 163, 163, 540 A.2d 647, 647 (1987) (per curiam) (adopting the *Baxter* rule for probation revocations, stating that "[w]hile uncorroborated hearsay evidence alone will not support a revocation," a defendant's failure to rebut the evidence will support the conclusion that he violated a probation condition). However, the underpinnings of the *Baxter* rule are weak, as this case demonstrates, and we now overrule it.

The *Baxter* maxim on uncorroborated hearsay is not based on logic; it is a legal fiction based on a policy disfavoring hearsay evidence. It derives from the so-called "residuum rule" created in *Carroll v. Knickerbocker Ice Co.*, 218 N.Y. 435, 440–41, 113 N.E. 507, 509 (1916), adopted by the United States Supreme Court in *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 230 (1938), and widely followed for a time by both federal and state courts. Under this rule, even though an administrative agency is not bound by the rules of evidence applicable in court proceedings, a reviewing court must set aside an administrative finding unless that finding is supported by a residuum of legal evidence, i.e., by at least some evidence that would be admissible in court. Throughout its history, the rule has been criticized.

See 3 K. Davis, Administrative Law § 16.6 (2d ed. 1980)(documenting scholarly and judicial criticism of rule); C. McCormick, McCormick on Evidence § 354 (3d ed. 1984) (labelling rule "logically unsound"); 1 J. Wigmore, Evidence § 4b, at 119–22 (Tillers rev. 1983)(criticizing rule).

The key problem with the residuum rule is that it equates rules for admissibility of evidence in jury trials with weighing the reliability of evidence before an administrative agency. The rule does not distinguish between varying degrees of hearsay reliability; instead it creates a per se rule without regard to circumstances of a particular case. As one critic states:

> Under the residuum rule a finding which is unsupported by evidence which would be admissible in a jury trial must be set aside, no matter how reliable the evidence may appear to the agency and to the reviewing court, no matter what the circumstantial setting may be, no matter what may be the evidence or lack of evidence on the other side, and no matter what may be the consequences of refusing to rely upon the evidence.

3 K. Davis, *supra*, § 16.6, at 239.

In *Richardson v. Perales*, 402 U.S. 389, 407–08 (1971), the United States Supreme Court implicitly retreated from *Consolidated Edison* by stating that its concern with "mere uncorroborated hearsay" was directed, not at all evidence that would be formally inadmissible in judicial proceedings, but only at material "without a basis in evidence having rational probative force." This somewhat cursory statement in *Perales* caused some lower federal courts to discard the residuum rule. See, e.g., *McKee v. United States*, 500 F.2d 525, 528 (Ct. Cl. 1974)(citing *Perales* for the proposition that, in an administrative hearing, hearsay can constitute "substantial evidence if sufficiently convincing to a reasonable mind"); *School Board of Broward County, Fla. v. H.E.W.*, 525 F.2d 900, 906 (5th Cir. 1976)("Based on the Supreme Court's approach in *Perales*, we must reject any per se rule that hearsay cannot constitute substantial evidence."); *Johnson v. United States*, 628 F.2d 187, 190 (D.C. Cir. 1980)("This rule [the residuum] no longer controls. We have rejected a per se approach that brands evidence as insubstantial solely because it bears the hearsay label."); *Bell Helicopter International, Inc. v. Jacobs*, 746 F.2d 1342, 1344

(8th Cir. 1984)("hearsay evidence alone may . . . support an agency determination. . . . A residuum of corroborating evidence of the type admissible in a jury trial is no longer required.")(citation omitted).

Although the rule has by no means been unanimously rejected, at least federal courts "are now much more inclined to allow findings to be based on hearsay than during the pre-Perales period." 3 K. Davis, *supra*, § 16.8, at 254. Moreover, "[i]ncreasingly the states refuse to apply it." C. McCormick, *supra*, § 354, at 1017; see, e.g., *Embers of Salisbury, Inc. v. Alcoholic Beverages Control Comm'n*, 401 Mass. 526, 530, 517 N.E.2d 830, 832 (1988)(accepting the *Perales* interpretation of *Consolidated Edison*); *Industrial Claims Appeals Office v. Flower Stop Marketing Corp.*, 782 P.2d 13, 17–18 (Colo. 1989)(en banc)(discussing *Perales* and holding that hearsay can constitute substantial evidence in reviewing administrative hearings unless the legislature mandates use of the residuum rule in particular type of case); see also C. McCormick, *supra*, § 354, at 1017 n.9 (quoting 1981 Revised Model State Administrative Procedure Act § 4-215(d) and accompanying Commissioners' Comment, which explicitly reject the residuum rule). Even New York, which originated the residuum rule, has now abandoned it. *300 Gramatan Avenue Associates v. State Div. of Human Rights*, 45 N.Y.2d 176, 180 n.*, 379 N.E.2d 1183, 1185 n.*, 408 N.Y.S.2d 54, 56 n.* (1978)("legal residuum rule . . . no longer obtain[s], regardless of whatever validity, if any, [it] may have once enjoyed").

In this case, plaintiff's contention that a parolee's act of testifying, regardless of content, rebuts the hearsay as a matter of law is wholly artificial and illogical. It also illustrates the weakness of the residuum rule as applied in *Baxter*. Although hearsay evidence is typically weak, its strength is not further diminished merely because the parolee speaks. The weight of evidence tending to establish a parole violation depends on the quality of the hearsay as well as any other evidence in the case. In short, resort to mechanical formulae to decide whether substantial evidence is absent or present in a given case is simplistic and evades meaningful analysis.

■ Instead of the residuum approach, we shall analyze the quality—the underlying "reliability and probative value," *Per-*

*ales*, 402 U.S. at 407–08—of the hearsay presented. A reviewing court must "evaluate the weight each item of hearsay should receive according to the item's truthfulness, reasonableness, and credibility." *Johnson*, 628 F.2d at 190-91 (hearsay statements are highly probative where declarants are disinterested witnesses, statements are essentially consistent, and counsel has access to statements prior to agency hearing); see also *Flower Stop*, 782 P.2d at 18 (enumerating factors that courts have found helpful in evaluating whether hearsay evidence is reliable, trustworthy, and probative for purposes of an administrative hearing).

Here the hearsay was sufficiently reliable to pass the test of admissibility discussed in *State v. Finch*, 153 Vt. 216, 569 A.2d 494 (1989). The observations of various police officers about when and where Vicki Magoon was found, the weather and the surrounding circumstances, and her condition are all matters where the "'specter of questionable credibility and veracity is not present.'" *Id.* at 218, 569 A.2d at 495 (quoting *Perales*, 402 U.S. at 407).

■ Moreover, plaintiff's testimony actually bolstered the hearsay evidence against him. At oral argument in our Court, plaintiff's counsel said that plaintiff did not contest that someone had beaten Magoon that night. Plaintiff merely asserted that he was not responsible for the beating. Viewing plaintiff's testimony before the board as generously as possible, it lacks, in context, any reasonable semblance to the truth. Plaintiff claimed that his cohabitant (at the time of the parole revocation hearing, plaintiff and Magoon were living together again) cleared up the misunderstanding about who beat her up by telling one of plaintiff's attorneys that the "allegation of the assault was untrue." This left the board with the following overriding question begging for an answer: if it was not plaintiff, then who assaulted Magoon and caused her, nearly nine months pregnant, to walk barefoot down a city street in the rain carrying her one-and-a-half-year-old child, while plaintiff slept at their home? Plaintiff decided not to call Magoon or any other witness to answer this question, which must have left the board with the distinct impression that his testimony was utterly incredible. Under the residuum rule, plaintiff's testimony—solely because it would be legally admissible in court—would be

substantial evidence outweighing the State's hearsay evidence, without regard to the reliability or credibility of either. Under the approach we adopt today, the hearsay in these circumstances was credible and reliable; plaintiff's live testimony was not. The board's decision was supported by substantial evidence.

## II. Confrontation

Relying on *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (unless good cause is shown, a parolee has a right to confront adverse witnesses), plaintiff claims his right to confrontation was violated because the State did not show cause to override the right.

As the superior court correctly found after it reviewed the board's proceedings, plaintiff did not apprise the board of possible confrontation clause violations. Plaintiff at no time explained to the board that he wanted to question the woman who accused him. Plaintiff never asked that Magoon be produced as a witness. He never objected to her absence, nor did he ask for the State to show "good cause" for her absence or for a continuance so that she could be produced as a witness. Plaintiff objected only to the parole officer repeating information from the police report on the ground that it was multiple hearsay. When the parole board chair asked, "Is there anything else you would like to say about this aspect at this time?", plaintiff's lawyer said nothing about a confrontation clause problem.

We think an objection on confrontation grounds should be specific because it triggers the consideration of a secondary issue, namely, whether circumstances making production of the witness difficult or impractical outweigh the parolee's need to confront and cross-examine the witness. See, e.g., *United States v. Bell*, 785 F.2d 640, 642–43 (8th Cir. 1986) (discussing factors to be considered in applying this balancing).

Having not raised the confrontation issue, plaintiff did not preserve the claim unless he can show that failure to either produce the witness or demonstrate good cause not to call her was plain error. V.R.E. 103(d); V.R.C.P. 61. We agree with the superior court's decision that plain error is conspicuously absent on this record.

Plaintiff himself relied on hearsay evidence (Magoon's recantation that plaintiff beat her) to rebut the State's hearsay evi-

dence (Magoon's allegation that plaintiff beat her). It was apparent that Magoon—who had resumed residing with plaintiff after the night of the assault—would have been willing and presumably available to testify favorably on plaintiff's behalf if he were truthful in his testimony. The board even expressed curiosity about Magoon's absence after plaintiff testified.

PLAINTIFF'S COUNSEL: That's all the evidence we would elicit.

CHAIR: But Vicki is not here?

PLAINTIFF'S COUNSEL: No. We are not objecting to the idea of hearsay, I mean we can't, the Supreme Court says that it can be done. So we like are offering hearsay, but we're trying to offer competent hearsay, not multiple hearsay with who-knows-what.

■ Plaintiff's strategy was to set up *Baxter* as a kind of legal checkmate. He defended against the charges without confronting Magoon, relying instead on his own testimony about what she had said to his lawyer. He maintained that as a matter of law the evidence was insufficient, as if his very act of speaking—regardless of the merits of his account—neutralized the probative force of the State's case. By taking this tactical approach, plaintiff purposely did not put confrontation in issue. Moreover, there is no plain error because plaintiff has never claimed that Magoon's failure to testify at the hearing prejudiced his defense.

*Affirmed.*

**Dooley, J.**, dissenting. I concur with the majority analysis in rejecting the residuum rule as espoused in *Baxter v. Vermont Parole Board*, 145 Vt. 644, 497 A.2d 362 (1985), as long as there is clear protection for the parolee's confrontation clause rights. The majority has, however, relied on an overly technical preservation rule to refuse to address plaintiff's confrontation rights. Accordingly, I dissent.

The majority has refused to consider plaintiff's confrontation rights because he "did not apprise the board of possible con-

frontation clause violations." His attorney's actual statement to the parole board was as follows:

> Aside from our objection of the evidence which we think should be disregarded, *Baxter* seems clear enough that hearsay will create a presumption, but if hearsay is rebutted by live testimony from the parolee, that presumption does not exist anymore and hearsay will not suffice to establish a violation. We have here a combination of hearsay totally, from the state's standpoint, and first-hand testimony from our standpoint, and under *Baxter* a violation cannot be found based upon that kind of evidence in the record.

Putting aside the references to *Baxter*, petitioner's position can be summed up as follows: "You can't revoke my parole on hearsay alone when I deny it. You must produce the live witnesses." This is the equivalent of a demand for confrontation clause protection without using the term. This objection alerted the board to the problem and the proper remedy. It is adequate preservation.

Although I would probably conclude that the majority was being overly technical if the parole revocation hearing were held by a court, I feel particularly strongly that this is the case given that the hearing is held by the parole board. There were no lawyers present at the board hearing, other than the lawyer for plaintiff. None of the board members are lawyers, and the case was presented by a parole officer. There were no clear rulings on any of plaintiff's numerous objections. Requiring the plaintiff to make a constitutional argument to the board to prevent consideration of evidence he is already attacking on related grounds is to create a procedural technicality without substance.

Many courts have held that the failure to raise constitutional issues in administrative proceedings does not prevent them from being raised on judicial review of these proceedings. See, e.g., *Rana v. United States*, 812 F.2d 887, 889–90 (4th Cir. 1987); *Fellin v. Administrator, Unemployment Compensation Act*, 196 Conn. 440, 446, 493 A.2d 174, 177 (1985); *Atkinson v. Parsekian*, 37 N.J. 143, 153, 179 A.2d 732, 737 (1962); *Randall v. Norberg*, 121 R.I. 714, 721, 403 A.2d 240, 244 (1979). We should adopt that rule for proceedings like this where there is no real-

istic chance of full consideration of the constitutional issue at the administrative level and plaintiff has apprised the administrative tribunal of the remedy he seeks. A more rigid rule is an unjust technicality.

I add only that I find wholly unconvincing the majority's discussion of why failure to address plaintiff's confrontation right is fair in this case. Essentially, the majority concludes that plaintiff waived the issue by the failure to produce the witness. Revocation of plaintiff's parole was based entirely on the out-of-court statements of an adverse witness. Unless we are going to say, and the majority comes close to this, that it is the parolee's responsibility to try to produce adverse witnesses, there is no waiver here. By placing duties to seek or to present adverse witnesses on the parolee, we are really saying that there is no confrontation right in these circumstances. That is a legal conclusion, not a preservation ruling, and I believe it is wrong.

Ironically, in a case originally decided by this Court, *State v. Finch*, 153 Vt. 216, 569 A.2d 494 (1989), the United States District Court has recently rejected the position of the majority on waiver. See *Finch v. Vermont Dist. Ct.*, Civil Action No. 90-9 (D. Vt. Sept. 24, 1990), adopting Magistrate's Report and Recommendation (Aug. 23, 1990) (Niedermeier, Mag.) (unpub.). The Magistrate's Report stated:

> Finally, the state's observations that the petitioner was free to cross-examine the witness and that petitioner did not demand that the declarants themselves testify dodges the point of the right to confrontation. We will not presume under these circumstances that petitioner waived his right to confrontation.

Magistrate's Report at 10. It makes no sense to have one waiver rule in this Court and another in federal court requiring resort to habeas corpus relief to obtain a decision on the merits.

Once we reach the merits of plaintiff's confrontation argument, we must reverse. I don't believe the State made the minimum showing required by due process of law to enable the board to admit the alleged victim's statement and rely upon it to revoke plaintiff's parole. The United States Supreme Court applied due process requirements to parole revocation proceedings in *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). Among the rights established in that case is "the right to confront and

cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Id.*; see also *Gagnon v. Scarpelli,* 411 U.S. 778, 786 (1973) (due process requires this same right in probation revocation). The *Morrissey* confrontation requirement does not bar use of all hearsay evidence. The opinion itself states that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey,* 408 U.S. at 489.

There is, however, clearly a limit to the board's ability to rely on hearsay evidence consistent with the due process rights of the parolee. The various courts which have examined that limit have held either that the board cannot rely on evidence of the sort admitted here or can do so only on findings not made here. See, e.g., *Commonwealth v. Joraskie,* 360 Pa. Super. 97, 100, 519 A.2d 1010, 1011 (1987).

A fair summary of the rule and procedure required by due process was articulated by the Wyoming Supreme Court in *Mason v. State,* 631 P.2d 1051, 1056 (Wyo. 1981) (citations omitted):

> Both the defendant and the social system have a stake in making sure the factual determination in a revocation hearing is not an arbitrary one but is based on facts which pass the *Morrissey,* truth-seeking test of cross-examination. In this case the only evidence presented was in the form of hearsay which the defense was unable to test and verify. This was a clear violation of the appellant's right to due process. The State must make a good-faith attempt to produce the witnesses at a probation- or parole-revocation hearing or else show cause why they cannot appear. If for some valid reason a witness is unavailable, whether or not the information may be introduced through hearsay will be determined by the use of a balancing test. This test will weigh the defendant's interest in confronting and cross-examining the witnesses against him with the practical difficulties of producing the witness.

Most courts that have considered the issue of reliance on hearsay evidence at parole or probation revocation proceedings have announced a rule similar to that in *Mason.* See, e.g., *State v. Fuller,* 308 Md. 547, 552–54, 520 A.2d 1315, 1317–18 (1987); *Moody v. Cunningham,* 127 N.H. 550, 555, 503 A.2d 819, 822

(1986) (to allow the State to meet its burden entirely by hearsay would eviscerate the due process protections); *Anaya v. State*, 96 Nev. 119, 123–25, 606 P.2d 156, 158–60 (1980); *People ex rel. McGee v. Walters*, 62 N.Y.2d 317, 319–20, 465 N.E.2d 342, 343, 476 N.Y.S.2d 803, 804 (1984); *Commonwealth v. Joraskie*, 360 Pa. Super. at 100, 519 A.2d at 1011; *State v. DeRoche*, 120 R.I. 523, 532–33, 389 A.2d 1229, 1234 (1978). The United States District Court for the District of Vermont has announced a similar rule in *Finch*. See *Finch v. Vermont Dist. Ct.*, Magistrate's Report at 9–10.

The State made no showing in this case to demonstrate the need to introduce the hearsay statement of the alleged victim or the police officer. The majority speculates that the alleged victim was available only to plaintiff and would have testified if her testimony were favorable to plaintiff, but there is no basis in the record to do more than speculate. Nor can that speculation be turned into a conclusion that plaintiff adopted a "tactical approach" to keep the alleged victim from testifying. Yet, the majority relies on just such a conclusion to hold that plaintiff waived his confrontation rights. I would hold that the admission of and reliance on the alleged victim's statement to the police officer, as testified to by the parole officer, violated plaintiff's due process rights.

The plaintiff's parole has been revoked based on perfunctory testimony of a parole officer containing multiple-layered hearsay allegations that plaintiff beat the woman with whom he was living. These are serious allegations, and they deserve serious consideration in a fair and just process consistent with the liberty interest involved. I am authorized to state that Chief Justice Allen joins in this dissent.