## Ralph Relation v. Vermont Parole Board and Its Members: Alice Hafner, Lorraine Graham, Ernest Torpey, Arthur Silvester and Elaine Charboneau

[660 A.2d 318]

No. 94-163

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed April 14, 1995

*Robert Appel,* Defender General, and *Judith A. Ianelli,* Prisoners' Rights Office, Montpelier, for Plaintiff-Appellant.

**Johnson, J.** Today, we hold that Article 10, Chapter I of the Vermont Constitution protects the liberty interest of the parolee by requiring the State to establish a parole violation by a preponderance of the evidence prior to revoking parole. Because the superior court upheld the substantial evidence standard for parole revocation in 28 V.S.A. § 552(b)(2), we reverse.

Plaintiff was convicted of petty larceny and possession of stolen property in May 1991 and was sentenced to a term of six months to four years. In March 1992, he was paroled by the Vermont Parole Board. Plaintiff's parole officer filed a request for violation of plaintiff's parole conditions in January 1993. The Parole Board found by substantial evidence that plaintiff had violated five conditions of parole, and then revoked parole. Plaintiff was incarcerated.

Plaintiff filed a declaratory action in superior court challenging the substantial evidence standard in 28 V.S.A. § 552(b)(2) under Article 10, Chapter I of the Vermont Constitution. He maintained that the substantial evidence standard allowed the Parole Board to find a violation of parole on less than a preponderance of the evidence and thus violated his state constitutional due process rights. The superior court held that the State's interest in swift administrative proceedings for parole violations outweighed the risk of unjust infringement of the parolee's liberty interest. It therefore concluded that the standard in § 552(b)(2) does not offend Article 10. Plaintiff appeals.

Section 552(b)(2) provides that "[i]f the alleged violation is established by substantial evidence, the board may continue or revoke the parole, or enter such other order as it determines to be necessary or desirable." The substantial evidence standard requires "that there be 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Baxter v. Vermont Parole Bd.,* 145 Vt. 644, 647-48, 497 A.2d 362, 364 (1985) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)), *overruled on other grounds by Watker v. Vermont Parole Bd.,* 157 Vt. 72, 596 A.2d 1277

(1991). Under this standard, a parolee may be found in violation of parole conditions even though the State cannot prove the violation by a preponderance of the evidence. See *In re Muzzy*, 141 Vt. 463, 473, 449 A.2d 970, 974 (1982) (substantial evidence rule allows board to make findings on less than preponderance of evidence). Defendant maintains that this standard violates Article 10, Chapter I of the Vermont Constitution, which, he claims, requires that a parole violation be found by a preponderance of evidence before parole may be revoked.

"The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972). If the prisoner violates a condition of this supervised community sentence, however, the Parole Board may revoke parole and require the prisoner to serve all or part of the sentence remaining within a correctional facility. 28 V.S.A. § 371. A parole revocation decision consists of two steps. First, there is a factual determination of whether the parolee has violated the conditions of parole. 28 V.S.A. § 552(b). If the Board concludes that there has been a violation, the second step is to determine whether a revocation is warranted. *Id.* While the first step requires fact-finding, the second step involves predictive and discretionary decisionmaking. *Morrissey*, 408 U.S. at 479-80; see 28 V.S.A. § 552 (alleged parole violation must be established before Board may consider revoking parole). In this case, we are concerned with the State's burden of proof at the first step of the proceeding, establishing the violation of parole conditions.

Article 10 provides that no person may be justly deprived of liberty, "except by the laws of the land." "[L]aws of the land" is synonymous with "due process of law." *State v. Messier*, 145 Vt. 622, 627, 497 A.2d 740, 743 (1985). We recently held that the due process clauses of both Article 10 and the Fourteenth Amendment require the State to establish inmate disciplinary infractions by a preponderance of the evidence prior to imposing punishment. *LaFaso v. Patrissi*, 161 Vt. 46, 54-55, 633 A.2d 695, 700 (1993). In *LaFaso*, we adopted the test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), under both Article 10 and the Fourteenth Amendment to determine whether a particular standard of proof satisfies due process in a particular proceeding. *LaFaso*, 161 Vt. at 51, 633 A.2d at 698. This test sets forth several factors to consider in balancing the competing interests: (1) the

private interest affected by the state action, (2) the risk of erroneously infringing on this interest under the applicable standard, (3) the governmental interest in the procedure, and (4) the burden on the government of imposing a higher standard. *Id.* at 51-53, 633 A.2d at 698-99.

■ The first factor to consider is the parolee's interest in continued conditional liberty. The liberty of the parolee "includes many of the core values of unqualified liberty," including, subject to conditions, the freedom to seek gainful employment and to be with family and friends. *Morrissey*, 408 U.S. at 482. Indeed, a parolee may be living substantially as others in the community at the time of a revocation proceeding. *Id.* Although still under sentence, the parolee has a strong interest in a just determination of the violation of parole because termination of parole inflicts a "grievous loss" on the parolee. *Id.* The parolee's interest in accurate fact-finding at a parole revocation hearing is at least as great as the interest of the prisoner in accurate fact-finding in a prison disciplinary proceeding. See *LaFaso*, 161 Vt. at 51, 633 A.2d at 698 (prisoner's interest in not being unjustly disciplined is highly important interest with direct and indirect consequences).

■ Second, the risk of an erroneous deprivation of the parolee's conditional liberty interest is significant under any standard less than a preponderance of the evidence. See *LaFaso*, 161 Vt. at 52, 633 A.2d at 699 (holding there was significant risk of erroneous discipline of innocent inmate under standard requiring less than preponderance of evidence). In the realm of fact-finding, the function of procedural protections is to minimize the risk of erroneous decisions. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 13 (1979). "It is difficult to conceive of an aspect of disciplinary procedure with a greater impact on the accuracy of fact-finding than the evidentiary standard on which the ultimate conclusion must be based." *LaFaso*, 161 Vt. at 52, 633 A.2d at 699. Applying any standard that calls for less than a preponderance of the evidence at this fact-finding stage invites error; it allows the Board to revoke parole even where the evidence indicates that it is more likely than not that there has been no violation of conditions.

■ Third, the government has an undeniably strong interest "in being able to return the individual to imprisonment without the burden of a new adversary criminal trial" but only "if in fact he has failed to abide by the conditions of his parole." *Morrissey*, 408 U.S. at

483. The government has no interest in revoking parole where the weight of evidence indicates there has been no parole violation. See *id.* at 483-84. Nor is the State's interest in a summary proceeding in this context as compelling as it is in controlling disruptive prisoners within the prison setting. *Id.* at 483. Thus, the State's interest in swiftness of the proceeding is not as strong as it was in *LaFaso.*

Finally, imposing a preponderance-of-the-evidence standard to establish a parole revocation will present little if any administrative burden on the government. The parolee is entitled to an opportunity to be heard and to present witnesses, and has the right to confront and cross-examine witnesses, unless good cause is shown to deny confrontation. *Morrissey*, 408 U.S. at 489. It will require little if any change in the current procedure to require that the findings be based on a preponderance of the evidence rather than simply on substantial evidence. See *LaFaso*, 161 Vt. at 53, 633 A.2d at 699 (higher standard will not impose undue hardship on State; any burden created by need to produce additional evidence in close cases will be offset by benefit to state and society of greater assurance that disciplinary cases will be correctly decided). As we noted in *LaFaso*, the preponderance standard generally applies in administrative adjudications in Vermont. *Id.* at 54, 633 A.2d at 700. Moreover, most states use the preponderance-of-the-evidence standard in parole revocation proceedings. 3 W. LaFave & J. Israel, Criminal Procedure § 25.4, at 162 (1984).

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Decisions appear arbitrary when the government may deprive an individual of an important liberty interest based on findings made against the weight of evidence. Thus, both the State and the parolee have strong interests in having parole violations "justified and based on an accurate assessment of the facts." *Id.* at 561. On balance, imposing the preponderance-of-the-evidence standard will greatly reduce the risk of erroneous parole violations while imposing minimal burden on the government. We therefore conclude that the substantial evidence standard in 28 V.S.A. § 552(b)(2) violates the due process rights protected by Article 10 and hold that proof of a parole violation must be established by a preponderance of the evidence. Cf. *In re Muzzy*, 141 Vt. at 473, 449 A.2d at 974 (substantial evidence rule denies grievant due process because it allows board to make findings on less than preponderance of evidence).

*Reversed and remanded for the superior court to consider plaintiff's requests for injunctive relief.*

**Morse, J.,** dissenting. In this case, we have no record of the evidence underlying the parole violation or the findings and conclusions of the Parole Board. We do not know whether the Board was convinced of Ralph Relation's guilt "beyond a reasonable doubt," "by clear and convincing evidence," "by a preponderance," or by some other standard of proof. The predicate for this action in superior court is merely the one word answer, "Yes," from the chair of the Board, who is not lawyer, in answer to a defense lawyer's question, "Does the Board interpret ['substantial evidence'] as less than a preponderance?" Defense counsel at the time he elicited the incriminating "Yes" even admitted, "[S]ubstantial evidence is a very murky kind of term as I understand it and I don't really know what it means." Based on this, counsel for the parties entered into a stipulation which in part stated:

> In reaching its determination, the Board found that the alleged violations were established by substantial evidence. The Board did not apply the standard of preponderance of the evidence.

The stipulation means little because a higher standard of proof than a preponderance may have been satisfied.

I do not believe after reviewing the limited record that the Board purposefully violates parolees on the basis that some suspicion of guilt is tantamount to guilt — despite its belief that the parolee is innocent of wrongdoing. The record does not demonstrate that the Board lives in Lewis Carroll's "Wonderland" where up is down and the sentence precedes the trial.

There must have been confusion over semantics. The statute governing the board's role, 28 V.S.A. § 552(b)(2), states:

> If the alleged violation is established by substantial evidence, the board may continue or revoke the parole, or enter such other order as it determines to be necessary or desirable.

*Baxter v. Vermont Parole Board,* the case the Board expressly followed in deciding the parole violation here, states:

> A parole violation must be established by substantial evidence. . . . This requires that there be "'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'". . . Unlike a criminal prosecution, a parole violation does not need to be established beyond a reasonable doubt. "[A]ll that is required is that the evidence and facts reasonably demonstrate that the person's conduct has not been as good as required by the terms and conditions of the release."

145 Vt. 644, 647-48, 497 A.2d 362, 364-65 (1985) (citations omitted). This quotation may not be a paragon of clarity, but it does not remotely suggest that the standard is less than a preponderance of the evidence. Less than a preponderance would mean that a violation would be proved if the evidence and facts demonstrate that the person's conduct has been better than required.

As pointed out in *In re Muzzy*, 141 Vt. 463, 470-71, 449 A.2d 970, 973 (1982), "substantial evidence" is a legal term of art that describes the deferential standard of review used by an appellate tribunal. The "substantial evidence" test is decidedly *not* a burden of proof. Section 552(b)(2) simply requires the Board to render its decisions to withstand appellate scrutiny. That statute is not unconstitutional merely because it is *silent* on the burden of proof.

The burden of proof, preponderance of the evidence, means that the evidence supports one outcome more than another. Burdens of proof may be greater than "more likely than not," such as "clear and convincing" and "beyond a reasonable doubt," but a burden of proof that fixes liability at less than "probability" is impossible.

To define liability on an "improbability" is unheard of — more arbitrary than "a flip of a coin." If the Board does its business in such a fashion, this record does not establish it. The question by the public defender and the simple "yes" by the Board's chair is hardly the foundation needed to launch this lawsuit. The record of the merits of the parole violation hearing is indispensable to this action. It is curiously absent. I would vacate the judgment.