¶ 35. I am authorized to state that Chief Justice Allen joins this dissent.

2004 VT 88

# State of Vermont v. Steven Brooks

[861 A.2d 1096]

No. 03-447

Present: Amestoy, C.J.,[1] Dooley, Johnson, Skoglund and Reiber, JJ.

Opinion Filed September 3, 2004

---

[1] Chief Justice Amestoy was present when the case was submitted on the briefs but did not participate in this decision.

162

*Edward G. Adrian,* Office of Secretary of State, Montpelier, for Plaintiff-Appellee.

*David H. Casier,* Burlington, for Defendant-Appellant.

¶ 1. **Dooley, J.** The issue in this appeal is whether respondent, Steven Brooks, was engaged in land surveying when he combined two deeds and a preexisting survey into a map depicting a boundary line adjustment pursuant to a conveyance that occurred twelve years earlier. Respondent appeals a superior court decision reinstating the Board of Land Surveyors' (Board) decision that respondent, by failing to prepare a survey abstract or perform any research or field investigation in connection with his preparation of the map, failed to meet certain minimum standards for surveys in violation of Rule 5.4(A) of the Rules of the Board of Land Surveyors. We reverse.

¶ 2. In 1999, Manson Surdam, a landowner in the Town of Williston, requested that respondent, a licensed land surveyor, complete the paperwork for a land transaction that took place twelve years earlier. In 1988, Surdam sold half an acre of his property to his neighbor to resolve a boundary dispute. He failed, however, to obtain subdivision approval from the town for this property division, and his attorney discovered the error in 1999, when Surdam was arranging to sell his property. Surdam contacted respondent to remedy the violation. Respondent determined from the town that he could remedy the violation by creating a map that combined the description on Surdam's original deed, the description on the deed from the 1988 conveyance, and a preexisting survey prepared by another surveyor, John Marsh. Town officials expressed mild embarrassment and told respondent that the town's only interest was in "mak[ing] the paperwork to line

up" with the conveyance. Respondent offered Surdam two options: to prepare a map as described above, or to prepare a full new land survey. For cost reasons, Surdam chose the former option.

¶ 3. Respondent created a map depicting the 1988 conveyance based upon the two deeds and the Marsh survey. He titled the map a "Boundary Line Adjustment," signed and affixed his seal to it. To distinguish his work from a survey, respondent placed disclaimer notes on the upper left hand corner of the cover page explaining to the reader that the map was not a survey and was not based on any field research. The notes occupy a space of about 4"x 6"; one of the notes provides:

> 7) The purpose of this plot is to depict a transfer of a small parcel of land that is recorded in Volume 84 Page 238 between Surdam and one Martha Whitehorn (now owned by Rainville). This conveyance of 0.50 acres of land was to resolve a boundary line between Surdam and Whitehorn but never received local approval.

¶ 4. In the midst of drawing the map, respondent realized that the Marsh survey contained a serious flaw such that the property description did not close. Respondent did not try to solve the error; instead he drew an arbitrary line to make the survey line close. Respondent noted the problem with the Marsh survey and his correction on the cover page of the map. This disclaimer occupied a space of about 1/4" x 4".

¶ 5. The map was filed in the land records, but the record does not disclose who filed it. Apparently, another land surveyor encountered the map and filed a complaint with the Board. After an investigation, the Board charged respondent with violating 26 V.S.A. § 2598(b)(4)[2] — violation of a Board rule. The Board specified the violated rule as Rule 5.4(A)(1),[3] which requires a land surveyor, when preparing a land

---

[2] The Board noted that § 2598(b)(4) had been amended in 1998 to change the list of actions considered to be unprofessional conduct and that the subsection specified in the charges did not apply. The Board found that the section that was violated was actually 3 V.S.A. § 129a(a)(3). Respondent apparently accepted the Board's modification of the charge against him and has not raised any claim of error with respect to it.

[3] Rule 5.4(A) reads:

> Whenever a land surveyor conducts a survey of property, the surveyor shall, at a minimum, perform the following:
> A. Research and Field Investigation:
> 1. Prepare a survey abstract.

survey, to "[p]repare a survey abstract." The content of a survey abstract is specified in Rule 5.3(J). It is undisputed that respondent did not create a survey abstract in connection with the Surdam map.

¶ 6. After a hearing, the Board made fifteen findings of fact, upon which it concluded that the map could be mistaken for a survey despite the disclaimer on the cover page. The Board, however, did not specifically address respondent's defense — that he was not engaged in land surveying when he prepared the map. Thus, the Board did not determine whether the preparation of the map involved land surveying. The Board determined that respondent engaged in unprofessional conduct using the following rationale:

> A licensed land surveyor does not have the authority to suspend the Board's regulations when they are inconvenient. The document prepared by the respondent was titled like a survey, signed like a survey, sealed like a survey, and filed like a survey. Like a survey, it was prepared with the intent of depicting a transfer of property. It was filed on the Williston Town Land Records with the knowledge that town officials and the public would rely on it.

> The Board understands that the respondent did what was requested by his client and the town officials. His duty as a licensed professional, however, was to tell the client and town officials what he could and could not do for them, rather than simply do their bidding. When a licensee's signature and seal are affixed to a document that is virtually indistinguishable from a survey plat, it should rightly carry some weight and

---

2. Examine, analyze and test consistency of the record evidence. Investigate and document inconsistencies and form preliminary conclusions as to the completeness of the record evidence.

3. Obtain and document from knowledgeable persons, if necessary, parol evidence which may control the location of the corners and the boundaries of the property under survey.

4. Search for monuments and physical evidence which control the location of the corners and the boundaries of the property under survey. Existing monumentation and physical evidence should not be removed or disturbed.

5. Record and completely describe in detail all physical evidence found or the lack of physical evidence. Descriptions shall include materials, size and shape, identifying marks or numbers, position and stability.

6. Make measurements to locate and perpetuate the location of pertinent physical evidence.

7. Record all measurements and pertinent information.

significance. The public must be reasonably assured that a certain amount of professionalism and minimum standards have been met by the licensed land surveyor who files documents for permanent storage on the land records of this State.

Based on this conclusion, the Board ordered that retention of respondent's license be conditional upon his completion of a full survey of Mr. Surdam's 1988 land transfer within eight months.

¶ 7. Respondent appealed the Board's decision, and the appellate officer reversed because the Board never explicitly found that respondent engaged in land surveying when he created the map. The State appealed, and the superior court reinstated the Board's decision, citing deference to the Board's findings. The court held that, based on the Board's findings, respondent had engaged in land surveying as defined in 26 V.S.A. § 2502(3) and, therefore, he was required to abide by the requirements of Rule 5.4(A)(1) when he prepared the map. According to the superior court, the question of whether respondent engaged in land surveying is a mixed question of law and fact and its conclusions followed from the facts found by the Board. The court particularly relied upon its conclusion that the map was a "survey plat" as described in 27 V.S.A. § 1403(b):

Mr. Brooks' survey of Mr. Surdam's property was created to portray an unpermitted 12 year old conveyance that was being retroactively permitted. Mr. Brooks, in purporting to depict it on a survey plat submitted for recording, was representing that he had engaged in a land surveying process, which he had not. Notwithstanding that he disclosed the limitations of his work in preparing the plan, he was engaged in preparing a graphic description of a property conveyance without having done so in compliance with professional standards. His work thus constituted "land surveying" within the meaning of 26 V.S.A. § 2502(3) for the reasons described above, and the survey plat he created falls within the requirements of 27 V.S.A. § 1403(b) and the Board rules.

¶ 8. Both parties agree that the sole issue in this appeal is whether respondent engaged in land surveying while preparing the map. As usual, we approach the review question under a limited standard of review. "We will affirm the Board's findings as long as they are

supported by substantial evidence, and its conclusions if rationally derived from the findings and based on a correct interpretation of the law." *Braun v. Bd. of Dental Exam'rs*, 167 Vt. 110, 114, 702 A.2d 124, 126 (1997). Here, the facts are undisputed, and the case turns on a question of law. In such cases, we frequently give additional deference to the conclusions of an administrative proceeding in which a professional's conduct is being evaluated by his or her peers. See *id.* As in the recent case of *Office of Professional Regulation v. McElroy*, 2003 VT 31, ¶ 7, 175 Vt. 507, 824 A.2d 567 (mem.), we do not think the additional deference is warranted here. This is essentially a jurisdictional dispute in which the Board members have no special expertise. Moreover, the governing construction was made by the superior court, rather than by the Board which had a different theory of the case.

¶ 9. Land surveying is a statutory term of art. The purpose of the licensing and regulation of land surveyors is "to safeguard property and the public welfare" with respect to the "practice of land surveying." 26 V.S.A. § 2501. To this end, the term is specially defined in the statutory scheme, 26 V.S.A. § 2502(3) (1998), *amended by* 26 V.S.A. § 2502(3) (Supp. 2003),[4] as follows:

---

[4] The revised statute reads:

"Licensed land surveyor" means a person licensed by the board who is:

(A) a professional specialist in measuring land;

(B) educated in the principles of mathematics, the related physical and applied sciences, and real property law; and

(C) engaged in the practice of land surveying as defined in this section.

The amended statute defines land surveying in 26 V.S.A. § 2502(4), as:

"Practice of land surveying" means providing, or offering to provide, professional services, including record research, reconnaissance, measurements, gathering parol evidence, analysis of evidence, mapping, planning, expert testimony, and consultation related to any of the following:

(A) locating, relocating, establishing, reestablishing, or retracing property lines or boundaries, or demarcating other legal rights or interests in any tract of land, road, right-of-way, or easement;

(B) determining, by the use of principles of surveying, the position for any boundary monument or reference point, or replacing any monument or reference point;

(C) making any survey for the division, subdivision, or consolidation of any tract of land;

(D) creating, preparing, or modifying graphic documents such as maps, plats, and plans, or electronic data used or referenced in instruments of conveyance of rights in real property, or which define rights in real property, or are used to define such rights;

"Land surveying" means the process of searching land records, applying the rules of evidence with respect to boundary law and applying the principles and methods of property measurement, all performed for the purpose of;

    (A) determining the proper location for monumentation of property boundaries and establishing that monumentation; or

    (B) determining the area of property within established boundaries; or

    (C) preparing written and graphic property survey descriptions for conveyancing.

In essence, respondent's argument is that when he created the map it was not done for any of the three alternative purposes in the statutory definition. The record is sparse on this issue, partially because, as the appellate officer found, the Board failed to address this question. The superior court, and the State, argue that respondent came within the third purpose to prepare "written and graphic property survey descriptions for conveyancing." We find this to be an overbroad reading of the statute. The town needed the map as part of its subdivision process, but did not require a survey. A subdivision or related permit[5] may be a necessary prerequisite for an effective conveyance of a subdivided lot, cf. *Hunter Broad., Inc. v. City of Burlington,* 164 Vt. 391, 393-94, 670 A.2d 836, 838-39 (1995) (requiring a state subdivision permit for conveyancing), or the subdivision may occur with or without a conveyance. Here, there was a conveyance, but respondent's map played no role in that conveyance, apparently because a survey on which the parties relied was done by another surveyor at the time. We conclude that the map did not meet the statutory definition for land surveying since it was not prepared "for conveyancing," 26 V.S.A.

---

    (E) calculating dimensions and areas, which may be used to define rights in real property.

[5] The nature of the permit Surdam needed, if any, is unclear. The zoning administrator's certification, which the town required respondent to place on the map, stated that approval of the boundary line adjustment "does not constitute the creation of a separate parcel of land," but instead "simply adjusts the physical location of the boundary of the adjoining parcels." The certification suggests that the town's interest is to obtain an accurate map of the property within the town rather than to regulate a conveyance. The town's process appears far removed from "conveyancing."

§ 2502(3), but was instead created for the sole purpose of obtaining a subdivision permit.

¶ 10. Two other factors support this conclusion. First, the statute prohibits the practice of land surveying without a license. 26 V.S.A. § 2503(a)(3). However, as it existed prior to 2003, the statute also contains limits on the above and does not prohibit the "preparation of subdivision proposals." *Id.* § 2503(b)(4). Because the preparation of a subdivision proposal would become an issue only if it allegedly involved land surveying within the statutory definition, we take this exclusion as a legislative recognition that preparing a map for subdivision approval, as respondent did here, should not be considered land surveying.

¶ 11. Second, we note that in 2003, after respondent's creation of the map and the Board's decision, the Legislature amended the definition so that the practice of land surveying now includes making a "survey for the division, subdivision, or consolidation of any tract of land," *id.* § 2502(4)(C), and amended the section on prohibitions to delete the exclusion for preparation of subdivision proposals, *id.* § 2503(b). Moreover, the land surveying definition now includes "mapping." *Id.* § 2502(4). Given the expansion of the legislative definition, we conclude that respondent's activities would clearly be covered by the current statute. We presume that an amendment to the statute is intended to change the law, unless the circumstances clearly show that only a clarification was intended. See *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 198, 733 A.2d 733, 740 (1999); see also *Perry v. Med. Practice Bd.*, 169 Vt. 399, 405, 737 A.2d 900, 905 (1999); *Montgomery v. Brinver Corp.*, 142 Vt. 461, 464, 457 A.2d 644, 646 (1983). We have nothing before us to suggest that a clarification was intended here. The amending legislation, 2003, No. 60, §§ 13-14, was based upon bill H. 449, introduced by the House Committee on Government Operations. The purposes of the bill were "to make adjustments to the system[] for regulating ... land surveyors" and also "makes changes to requirements relating to all regulated professions involving unauthorized practice, [and] unprofessional conduct." H. 449, 2003-2004 Gen. Assem., Bien. Sess. (Vt. 2003). Whether we label the amendments as adjustments to the system or changes to requirements, they are modifications of existing law, rather than clarifications. In any event, we could not call the deletion of the exclusion for preparation of subdivision proposals a clarification.

¶ 12. In reaching this decision, we must specify what is not involved and why. Both the Board and the State place emphasis on the fact that

the Marsh survey did not close the parcel and respondent artificially created his map to show a parcel with closed boundaries. Respondent is charged with creating an incomplete survey, not an inaccurate one. The error in the Marsh survey, and respondent's actions in response to that error, as disclosed on the map, are not relevant to the charge against him.

¶ 13. The State's brief to this Court suggests a different theory in which the errors in the Marsh survey were relevant. It argues that by drawing a closed parcel, respondent was "determining the area of property within established boundaries," an alternative purpose of land surveying under § 2502(3). Again, we find the argument to make the statute applicable a stretch. Because of the error in the Marsh survey, the boundaries were not "established" and respondent was explicitly not establishing them to correct the error. The area of the parcel was not relevant to the subdivision or displayed on the map. Determining the area of the parcel was not the purpose of the map.

¶ 14. The Board seems to have relied upon a form of consumer protection — to protect the public from confusing respondent's map with a survey. Thus, it emphasized that respondent's map was "titled like a survey, signed like a survey, sealed like a survey, and filed like a survey." As we note in the next paragraph, the signature and seal were required by statute, whether or not the document was a survey. The title was specified by the town official, and there is no evidence to show how the map came to be filed. Again, we emphasize that respondent was not charged with creating a document that could be confused with a survey. The Board's rationale does not support the allegation of unprofessional conduct before it.

¶ 15. Two statutes figure in the decisions of the Board and the superior court, and require some explanation. The Board indicated that when a surveyor's "signature and seal are affixed to a document that is virtually indistinguishable from a survey plat, it should rightly carry some weight and significance." It appears, however, that respondent's signature and seal were required by statute. 26 V.S.A. § 2596(a) reads:

> Each licensed land surveyor shall procure a personal seal in a form approved by the board. The surveyor shall affix the surveyor's signature and seal together with a certification statement as to the nature of the survey work upon all completed maps, plats, surveys or other documents before deliv-

ery thereof to any client or before any map, plat, survey or other document is offered for filing at the office of the town clerk or any other proper authority. The certification statement shall clearly set forth what information was used as the basis of the survey and shall indicate that the survey work identified thereon is consistent with this information.

By affixing his signature, seal and explanation of the nature of the document, respondent was complying with the letter and purpose of § 2596(a). Indeed, the reference to maps as a class of documents separate from surveys support respondent's position that licensed land surveyors routinely create documents that are not land surveys.

¶ 16. The statute's requirement that surveys must contain a description of the information used as a basis for the work also supports respondent's actions. The public should be expected to look to the kind of certification information respondent added to understand the map's nature. The Board concluded that, "[e]xcept for the notes in the upper-left hand corner, the document is a survey." Thus, the Board recognized that the notes differentiated the map from a survey, but minimized the significance of the notes. The import of § 2596(a) is that information, such as that contained in the notes, is routine and the public is expected to read this information to understand the significance of the document. We cannot attach the "weight and significance" the Board did to the seal and signature. We find that their presence, along with the explanatory notes, shows compliance with the applicable law, not the opposite.

¶ 17. The superior court relied upon 27 V.S.A. § 1403(b) for the proposition that the map contained the required elements of a survey plat and thus should be treated as a survey. There is no indication in the record that the map was filed in accordance with the chapter on land plats, see id., or was intended to comply with that section. The requirements generally relate to the form of the document — like the sheet material and margin size, see id. § 1403(b)(1), (5). The most important requirement — that the survey plat show the information required by 26 V.S.A. § 2596 and contain "a certification that the plat conforms with requirements of this section," 27 V.S.A. § 1403(b)(6) — is inapplicable to plats prepared for subdivision approval. See 27 V.S.A. § 1404(b). There is no certification of conformity with § 1403(b) on respondent's map. We cannot conclude that § 1403(b) makes respondent's map a land survey.

*Reversed; the charge of unprofessional conduct against respondent is dismissed.*