2014 VT 18

## Edwin Rodriguez v. Andrew Pallito, Commissioner, Department of Corrections and Vermont Parole Board

[93 A.3d 102]

No. 13-155

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Crawford, Supr. J., Specially Assigned**

Opinion Filed February 7, 2014

*Matthew Valerio*, Defender General, and *Patricia Lancaster*, Prisoners' Rights Office, Montpelier, for Plaintiff-Appellee.

*William H. Sorrell*, Attorney General, and *Sarah Katz*, Assistant Attorney General, Montpelier, for Defendants-Appellants.

¶ 1. **Reiber, C.J.** The State of Vermont appeals the superior court's reversal of the Vermont Parole Board's decision to revoke

Edwin Rodriguez's parole. On appeal, the State argues that the court erred in (1) weighing the evidence and assessing witness credibility when reviewing the parole board's decision, and (2) concluding that the parole violation was not established by a preponderance of the evidence. For the reasons that follow, we affirm the trial court.

¶ 2. We begin with the facts. The Vermont Parole Board (the Board) revoked parolee's parole in December 2012, after two hearings. The first hearing took place in June and July 2012, and the Board unanimously voted that parolee had violated his parole conditions on the basis that he assaulted his mother on April 20, 2012 in Springfield, Massachusetts, where he was paroled. Parolee challenged the revocation in the Rutland Superior Court on the grounds that parolee's mother and sister were not present at the hearing, despite parolee's request that these witnesses attend and be subject to cross-examination. The State conceded that the violation hearing lacked an appropriate measure of due process because the Board had made insufficient efforts to secure the testimony of the witnesses, who lived in Massachusetts. Consequently, the Board relied heavily on hearsay evidence from a police officer who was present at the scene but did not witness the confrontation. The court remanded to the Board for a second hearing, with the instruction that the Board provide a fair hearing, consistent with parolee's right to cross-examine witnesses.

¶ 3. Parolee's mother and sister did not appear at the second violation hearing, held in December 2012. His mother was not present despite her assurances to the Board that she would appear in person, and his sister refused to testify. The Board noted on the record that it lacked authority to subpoena out-of-state residents, that attempts to secure their appearance had failed, and that the hearsay evidence was reliable. Once again, the Board concluded by a preponderance of the evidence that parolee had violated his parole conditions and voted unanimously to revoke parole. The Board found that parolee violated three conditions of parole: that he "shall commit no act punishable under the law; . . . shall not engage in violent assaultive, or threatening behavior; . . . and shall conduct [him]self in an orderly and industrious manner."

¶ 4. The Board relied on the following evidence. The arresting officer testified by telephone that, although he did not see the incident in question, he and an assisting officer had responded to

a call from an unknown person regarding a domestic disturbance involving parolee. The officers interviewed parolee's mother and sister after arriving at the scene. The sister told the officer that parolee had grabbed the mother by the neck and pushed her. The officer also testified that he had directly observed some scratches on the mother's neck, but this observation was not included in his police report describing the incident. On cross-examination, the officer stated, "I'm pretty sure she had marks." The officer did not have his signed arrest report and notarized statement on hand to refresh his memory during his testimony. These documents were, however, contained in the record considered by the Board.

¶ 5. The Board also received an arrest report from an assisting officer, which was similar to the arresting officer's report but more detailed. According to this report, the sister was yelling at parolee when the officers arrived on scene, and she shouted that parolee had just hit their mother. Parolee began running down the block and was then detained. The sister claimed that parolee had called to ask for her help moving him and his girlfriend out of their mother's house. During the move, parolee allegedly made derogatory remarks toward the mother, and the sister demanded that he stop. The sister explained that the mother then approached parolee's girlfriend and confronted her about parolee's past actions. Parolee then allegedly grabbed his mother by the throat and pushed her against a car. The assisting officer also interviewed the mother, whose story was substantially similar to the sister's. Although the report states that the mother mentioned that parolee had left scratches and redness on her neck, the assisting officer did not mention in the report any personal observations that would verify her statements.

¶ 6. Finally, the Board received testimony from parolee. Parolee testified that on the day in question he was in the process of moving out of his mother's residence. He stated that he was having "a little discussion" with his mother when "somebody called the police officers." He denied touching his mother.

¶ 7. Parolee was arrested and arraigned on assault charges, but the charges were dismissed one week later at the request of his mother, who also asserted her Fifth Amendment privilege. Nevertheless, the Board concluded that there was sufficient evidence to find a violation by a preponderance of the evidence.

¶ 8. Parolee again appealed to the superior court, challenging the second hearing on the grounds that the Board relied on

information that was alleged to be "innuendo," and therefore not admissible. He further renewed his objection that the Board's reliance on the officers' affidavits violated his "Fourteenth Amendment due-process rights to confront adverse witnesses because [they are] hearsay."

¶ 9. In response to parolee's challenges, the court noted that despite the mother's and sister's alleged complaints to the police, these witnesses did not testify at either revocation hearing. The attorney for the Board argued that "the department doesn't have subpoena power in Massachusetts . . . [s]o therefore, they're allowed to use these hearsay statements." The court responded that, regardless of the hearsay evidence, the officers should have been looking at the scene of the incident for evidence "that would indicate a physical confrontation." The court emphasized that none of the officers at the scene "verified" the witnesses' hearsay testimony regarding scratches on the mother's neck "by personal observation" in their police affidavits. The court opined "that if [the mother's] neck was red and there were scratches, police officer could easily verify it and say I observed the redness and the scratches on the neck."[1] Moreover, the court expressed doubt regarding the arresting officer's credibility during the revocation hearing, stating that "[h]e appeared not to have good recall, or decent evidence. He said he thought there were scratches on the back of . . . the mother's neck, but he was wishy-washy on cross-examination as to . . . whether or not that was something that he actually remembered or not." Finally, the court noted that parolee was never convicted and, in fact, the case was dismissed one week later.

¶ 10. The court concluded that without the mother's and sister's testimony, there was "no way to judge their credibility." Consequently, there was a "very significant gap in [the] burden of proof," leaving the court to rely on hearsay evidence. And to the extent that the arresting officer verified the mother's complaint by claiming that he observed the scratches on her neck, the court found that he vacillated in his testimony. Given these considerations, the court found that, based on the evidence, the State did not prove the alleged parole violations by a preponderance of the

---

[1] At first, the court incorrectly stated that the arresting officer never testified in the hearing that he saw the scratches on the neck, and was corrected by the Board's attorney.

evidence. The court stated, "[I]f it's fifty-fifty, it's fairly close but by preponderance of the evidence, the scales weighing equal, I can't find that there's a violation."

¶ 11. The State appeals the court's decision, arguing that the court erred in (1) weighing the evidence and assessing witness credibility when it was reviewing the Board's decision, and (2) concluding that the parole violation was not established by a preponderance of the evidence.

## I.

¶ 12. As an initial matter, we address parolee's argument that the appeal in this case was untimely. Under Vermont Rule of Appellate Procedure 4(a), an appeal must be filed within thirty days of the date of entry of the judgment appealed from. Parolee asserts that the final judgment was the court's February 7, 2013 order issued at parolee's Vermont Rule of Civil Procedure 75 hearing, which reversed the Board's decision, required a new parole plan, and ordered a status conference in two weeks. Because the State's appeal, filed April 9, 2013, was more than thirty days after the court's order, parolee asserts that the appeal should be dismissed as untimely.

¶ 13. ■ We conclude that the court's February 7 order was interlocutory, not final. "To be final and appealable an order must end litigation on the merits or conclusively determine the rights of the parties, leaving nothing for the court to do but execute the judgment." *In re Burlington Bagel Bakery, Inc.*, 150 Vt. 20, 21, 549 A.2d 1044, 1045 (1988) (quotation omitted). Here, the trial court did not conclusively determine the parties' rights and liabilities in its decision. To the contrary, at the hearing the court expressed concern that parolee needed to receive "an appropriate plan" before being released, including a plan for "appropriate housing [and] appropriate living circumstances." The court ultimately ordered that a parole plan be developed and set a status conference for two weeks later. After the Board set new conditions for parolee, the State filed a request for final judgment on February 28, 2013, "for the purposes of determining whether to appeal." Following a status conference on March 28, 2013, the court issued its final judgment. The State appealed on April 9, 2013.

¶ 14. ■ Parolee cites *Bridge v. United States Parole Commission*, 981 F.2d 97 (3d Cir. 1992), for the proposition that a trial

court's order granting a parolee's habeas corpus petition is a final order for the purposes of appealability. However, that case is distinguishable. The federal district court in that case reversed the U.S. Parole Commission's finding regarding the parolee's offense level and ordered the Commission to place the parolee in a different offense severity level. *Id.* at 100. The court then ordered the clerk to mark the matter closed. *Id.* at 102. In that case, then, the court's order completely resolved the rights and liabilities of the parties concerning the habeas corpus petition. Here, the court's order did not resolve these issues and in fact expressly contemplated further proceedings in order to resolve them. Therefore, the court's February 7, 2013 order was not final. Rather, final judgment was not granted until March 28, 2013, and the appeal was timely.

## II.

¶ 15. Next, we address the State's argument that, in its review of the Board's proceeding, the trial court improperly evaluated the weight of the evidence and assessed the credibility of the witnesses, in essence substituting its judgment for that of the fact-finder, the Board. Whether the trial court applied the proper standard of review of an agency's decision is a legal question which we review de novo. *Rhoades Salvage/ABC Metals v. Town of Milton Selectboard*, 2010 VT 82, ¶ 6, 188 Vt. 629, 9 A.3d 685 (mem.).

¶ 16. ■ ■ Our precedent regarding court review of the sufficiency of the evidence in agency adjudications is clear: a court must apply particular deference to the agency's fact-finding, and cannot substitute its judgment for that of the agency. "[I]n reviewing the sufficiency of the evidence supporting quasi-judicial decisions under Rule 75, we determine only whether there is any competent evidence to justify the adjudication." *Rouleau v. Williamstown Sch. Bd.*, 2005 VT 131, ¶ 4, 179 Vt. 576, 892 A.2d 223 (mem.) (quotations omitted). As this Court recently explained:

> [Rule 75] review is confined to questions of law and encompasses the consideration of evidentiary points only insofar as they may be examined to determine whether there is any competent evidence to justify the adjudication, much as in the case of a motion for a directed verdict. Discretionary rulings may be set aside only for

> abuse . . . . Under the deferential standard of review accorded administrative and quasi-judicial bodies . . . it is not for the superior court to independently weigh the evidence to make its own factual findings. Rather, the superior court on a Rule 75 appeal must uphold factual findings if any credible evidence supports the conclusion by the appropriate standard.

*Turnley v. Town of Vernon*, 2013 VT 42, ¶ 11, 194 Vt. 42, 71 A.3d 1246 (citations and quotations omitted). Although our decisions in *Rouleau* and *Turnley* addressed court review of school board and town decisions, respectively, this deferential standard as to findings of fact can be found throughout our cases dealing with similar statutory schemes. See *Herring v. Gorczyk*, 173 Vt. 240, 243, 789 A.2d 955, 958 (2001) ("On judicial review of the sufficiency of evidence at a prison disciplinary hearing, the hearing officer's final determination must be upheld if it is supported by some evidence in the record." (quotation omitted)); *Favreau v. Dep't of Emp't & Training*, 156 Vt. 572, 577, 594 A.2d 440, 443 (1991) (holding in appeal from Employment Security Board that "[o]ur function on appeal is not to weigh the evidence anew as a trier of fact but to determine if the Board's findings and conclusions are supported by credible evidence"); *Hall v. Dep't of Soc. Welfare*, 153 Vt. 479, 486-87, 572 A.2d 1342, 1346 (1990) (holding in appeal from Human Services Board that "[t]his Court will set aside the clearly erroneous findings of an administrative board, but where the record contains any credible evidence to fairly and reasonably support the findings, the board's decision will stand"); *In re Troyse,* 142 Vt. 612, 616, 460 A.2d 469, 471-72 (1983) (holding in appeal from Labor Relations Board that "administrative findings shall not be set aside unless clearly erroneous, and they will not be so found if there is any credible evidence fairly and reasonably supporting them").

¶ 17. ■ Therefore, in reviewing the Board's factual findings, the trial court cannot substitute its judgment for that of the fact-finder in assessing witness credibility, or in assessing the weight of the evidence. See *Turnley*, 2013 VT 42, ¶ 11; *Rouleau*, 2005 VT 131, ¶ 4; see also *Lewis v. Brown*, No. 10-CV-0796(MAT), 2011 WL 6148938, at *5 (W.D.N.Y. Dec. 12, 2011) (explaining that in the analogous federal parole system, "[t]he proper weight to be accorded to the evidence and the credibility of the witnesses are

determinations for the factfinder and are not grounds for reversal, even on direct appeal").

¶ 18. ■ However, deference to the Board's factual findings and discretionary decision-making does not disturb the ability of courts to review matters within their purview. Proceedings before the Board inevitably invoke questions beyond its expertise. Constitutional questions, including whether the parolee's due process rights were met, often arise. These issues dovetail with evidentiary issues, such as the admissibility of hearsay evidence. The Board's expertise is limited to determining whether an offender is likely to lead a law-abiding life, see 28 V.S.A. § 502a; it lacks expertise in constitutional and evidence law. Accordingly, we have developed separate standards that enable courts to review these questions. See, e.g., *Herring*, 173 Vt. at 243-44, 789 A.2d at 958-59 (holding that in prison disciplinary proceeding, testimony from confidential informants must have indicia of reliability to be admissible); *Relation v. Vt. Parole Bd.*, 163 Vt. 534, 538, 660 A.2d 318, 320 (1995) (reviewing de novo Board's statutory burden of proof determination and holding that Vermont Constitution requires Board to establish parole violation by preponderance of the evidence); *Watker v. Vt. Parole Bd.*, 157 Vt. 72, 76-77, 596 A.2d 1277, 1280 (1991) (holding that hearsay evidence must be reliable to be admissible in parole revocation proceeding).

¶ 19. ■ ■ We now address the trial court's decisions in this case. Although the court had the authority to ensure that good cause existed to deny parolee's confrontation rights, *State v. Decoteau*, 2007 VT 94, ¶ 12, 182 Vt. 433, 940 A.2d 661, it could not make credibility judgments or weigh the evidence. See *Turnley*, 2013 VT 42, ¶ 11 ("[I]t is not for the superior court to independently weigh the evidence to make its own factual findings."). Accordingly, we conclude that the court's reasoning, which evaluated the evidence nondeferentially under a preponderance of the evidence test, did not comply with the standard that factual findings must be upheld if supported by "any credible evidence." *Id.*

¶ 20. ■ ■ That does not, however, end the inquiry. Unlike the factual findings or discretionary decisions of the Board, whether the evidence at hearing met appropriate standards for admissibility is a question of law that the court reviews de novo. See *State v. Brooks*, 2004 VT 88, ¶¶ 8, 9-17, 177 Vt. 161, 861 A.2d 1096

(holding that administrative body with "no special expertise" in jurisdictional question did not warrant "additional deference" as to that question, and consequently deferring to the body's findings of fact but reviewing de novo its legal conclusions); see also *In re Diel*, 158 Vt. 549, 551, 614 A.2d 1223, 1225 (1992) (noting that issues of due process were outside of the Human Services Board's expertise). Therefore, the alleged deprivation of parolee's constitutional rights may provide an alternate ground to affirm the trial court's ruling. *In re Handy*, 171 Vt. 336, 343, 764 A.2d 1226, 1234 (2000) ("We will not reverse a lower court's decision if the record before us discloses any legal ground which would justify the result." (quotation omitted)).

¶ 21. ▮▮ A parolee is entitled to due process protections under the Fourteenth Amendment and is therefore afforded the right to confront adverse witnesses. *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). Hearsay is thus inadmissible in these proceedings unless the hearing officer specifically finds good cause for not requiring confrontation. *United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999) ("Under *Morrissey*, every releasee [including parolees] is guaranteed the right to confront and cross-examine adverse witnesses at a revocation hearing, unless the government shows good cause for not producing the witnesses."). In *State v. Austin* we recognized this requirement, holding that "a trial court must make an explicit finding, and must state its reasons on the record, whether there is good cause for dispensing with the probationer's confrontation right and admitting hearsay into evidence."[2] 165 Vt. 389, 396, 685 A.2d 1076, 1081 (1996). This standard is equally applicable to the parole revocation context. See *Morrissey*, 408 U.S. at 489 (extending due process protections to parole revocation).

¶ 22. ▮▮ "Although we have not explicitly outlined the elements of good cause . . . the reliability of the evidence is a key factor." *Decoteau*, 2007 VT 94, ¶ 12; see also *Austin*, 165 Vt. at 396, 685 A.2d at 1081 (explaining that an "important factor in the court's

---

[2] The State argues that "whether good cause exists is a mixed question of fact and law" left to the discretion of the fact-finder. However, none of the cases offered by the State arise in the context of an administrative body's decision to deny a party's confrontation right. Thus, we find the deferential standard urged by the State to be unavailing. Rather, we view the question of whether good cause existed to deny confrontation rights as one of law to be reviewed de novo.

determination of good cause is the reliability of the evidence offered by the State, particularly where that evidence bears traditional indicia of reliability"). To determine reliability, the reviewing court must "analyze the quality — the underlying reliability and probative value — of the hearsay presented. A reviewing court must evaluate the weight each item of hearsay should receive according to the item's truthfulness, reasonableness, and credibility." *Watker*, 157 Vt. at 76-77, 596 A.2d at 1280 (citation and quotation omitted).

¶ 23. Here, the State argued that there was good cause because the witnesses to the incident were in Massachusetts and did not respond to the parole officer's multiple attempts to procure them. According to the parole officer, parolee's mother told the parole officer that she would attend the hearing in person, but ultimately failed to attend without communicating any reason for her absence. Further, parolee's sister flatly refused to attend the hearing. The parole officer did not attempt to procure "conventional substitutes for live testimony," such as affidavits from the complaining witnesses, parolee's mother and sister. *Austin*, 165 Vt. at 397, 685 A.2d at 1081 (quotation omitted). Rather, the Board relied on the testimony of parolee and the arresting officer, and the police affidavits of the arresting and assisting officers. Because neither of the officers witnessed the incident, their testimony was based almost entirely on hearsay, with the exception of the arresting officer's possible observation of the marks on the mother's neck.

¶ 24. ██ ██ We hold that there was inadequate good cause for denial of confrontation in the Board hearing, because the hearsay evidence received by the Board was unreliable.[3] See *id.* at 397, 685 A.2d at 1082 (concluding that police affidavit lacked "traditional indicia of reliability"). First, although " 'police reports may be demonstrably reliable evidence of the fact that an arrest was made, . . . they are significantly less reliable evidence of whether the allegations of criminal conduct they contain are true.' " *Decoteau*, 2007 VT 94, ¶ 17 (quoting *United States v. Bell*, 785 F.2d 640, 644 (8th Cir. 1986)). This is because the relationship between police officers and those they arrest is personal and

---

[3] We note that many of the trial court's findings, though framed as factual determinations rather than conclusions regarding parolee's confrontation rights, concur substantially with our concerns articulated here.

adversarial, and thus subject to inferences and conclusions. *Austin*, 165 Vt. at 397, 685 A.2d at 1081-82; see also *Decoteau*, 2007 VT 94, ¶ 14 (outlining considerations to assess reliability, including whether hearsay contains conclusions that should be subject to cross-examination).

¶ 25. Further, the police affidavits here lack the redeeming level of specificity and detail of the police affidavits examined in *Watker*, which described in detail the victim's injuries and the circumstances in which the police found the victim. 157 Vt. at 73, 596 A.2d at 1278. In particular, we share the trial court's concern that neither the arresting nor assisting officer's police affidavits contained their personal verification of the scratches on the mother's neck, an observation that the arresting officer later testified to in the revocation hearing. The omission of such a crucial detail brings the reliability of the affidavits as a whole into question, especially because this observation was the only direct evidence offered to corroborate the hearsay evidence. See *Comito*, 177 F.3d at 1171 (holding that the more important particular evidence is to a finding and the more its reliability is in question, the greater the interest in testing it through confrontation); see also *Decoteau*, 2007 VT 94, ¶ 14 (noting that hearsay evidence is "more reliable if it contains a greater level of specific detail").

¶ 26. Second, we find the Board's admission of statements made by parolee's mother and sister to the officers at. the scene, through both the police affidavits and the arresting officer's testimony at the hearing, even more problematic than its reliance on the police affidavits. First, these statements were oral; the officers never obtained a sworn statement of any kind from either witness. Second, these witnesses refused to testify at the hearing. In particular, parolee's mother, the alleged victim, exerted her Fifth Amendment right against self-incrimination rather than testify against parolee. Consequently, the criminal charge against parolee based on this incident was dismissed. Given these reasons for the unavailability of the declarants, and the importance of their statements to the Board's finding of a violation, we conclude that the mother's and sister's statements are unreliable.

¶ 27. Without this unreliable hearsay, the only evidence the Board could have properly relied upon was the arresting officer's observations of redness and scratches on the mother's neck. In the absence of more context, it would be impossible for the Board

to determine where the scratches came from, or how the incident occurred. Accordingly, the officer's observation, in and of itself, does not constitute "competent evidence to justify the adjudication." *Rouleau*, 2005 VT 131, ¶ 4 (quotation omitted).

¶ 28. Consequently, although we reject the nondeferential standard of review applied by the trial court, we nonetheless affirm because the hearsay evidence relied on by the Board was unreliable, and the remaining evidence was not sufficiently credible to support the Board's findings of fact.

*Affirmed.*