2014 VT 18



Rodriguez v. Pallito and Vermont
Parole Board (2013-155)

 

2014 VT 18

 

[Filed 07-Feb-2014]

 

NOTICE:  This opinion is subject
to motions for reargument under V.R.A.P. 40 as well as formal revision before
publication in the Vermont Reports.  Readers are requested to notify the
Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont
Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors
in order that corrections may be made before this opinion goes to press.

 

 


 2014 VT 18
 
  


 No. 2013-155
 
  


 Edwin Rodriguez 
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Rutland Unit,
 
 
  
 
 
 Civil Division
 
 
  
 
 
  
 
 
 Andrew Pallito, Commissioner, 
 Department of Corrections and 
 Vermont Parole Board
 
 
 October Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 William
 D. Cohen, J.
 
 
  
 
 Matthew Valerio, Defender General, and Patricia Lancaster,
Prisoners’ Rights Office,

  Montpelier, for Plaintiff-Appellee.

 

William H. Sorrell, Attorney General, and Sarah Katz,
Assistant Attorney General, Montpelier,

  for Defendants-Appellants.

 

 

PRESENT:    Reiber, C.J., Dooley, Skoglund and Robinson,
JJ., and Crawford, Supr. J.,

                     Specially Assigned

 

 

¶ 1.            
REIBER, C.J.   The State of Vermont appeals the superior court’s
reversal of the Vermont Parole Board’s decision to revoke Edwin Rodriguez’s
parole.  On appeal, the State argues that the court erred in (1) weighing the
evidence and assessing witness credibility when reviewing the parole board’s
decision, and (2) concluding that the parole violation was not established by a
preponderance of the evidence.  For the reasons that follow, we affirm the
trial court.    

¶ 2.            
We begin with the facts.  The Vermont Parole Board (the Board) revoked
parolee’s parole in December 2012, after two hearings.  The first hearing took
place in June and July 2012, and the Board unanimously voted that parolee had
violated his parole conditions on the basis that he assaulted his mother on
April 20, 2012 in Springfield, Massachusetts, where he was paroled.  Parolee
challenged the revocation in the Rutland Superior Court on the grounds that parolee’s
mother and sister were not present at the hearing, despite parolee’s request
that these witnesses attend and be subject to cross-examination.  The State
conceded that the violation hearing lacked an appropriate measure of due
process because the Board had made insufficient efforts to secure the testimony
of the witnesses, who lived in Massachusetts.  Consequently, the Board relied
heavily on hearsay evidence from a police officer who was present at the scene
but did not witness the confrontation.  The court remanded to the Board for a
second hearing, with the instruction that the Board provide a fair hearing,
consistent with parolee’s right to cross-examine witnesses. 

¶
3.            
Parolee’s mother and sister did not appear at the second violation
hearing, held in December 2012.  His mother was not present despite her
assurances to the Board that she would appear in person, and his sister refused
to testify.  The Board noted on the record that it lacked authority to subpoena
out-of-state residents, that attempts to secure their appearance had failed,
and that the hearsay evidence was reliable.  Once again, the Board concluded by
a preponderance of the evidence that parolee had violated his parole conditions
and voted unanimously to revoke parole.  The Board found that parolee violated
three conditions of parole: that he “shall commit no act punishable under the
law; . . . shall not engage in violent assaultive, or
threatening behavior; . . . and shall conduct [him]self in
an orderly and industrious manner.”  

¶
4.            
The Board relied on the following evidence.  The arresting officer
testified by telephone that, although he did not see the incident in question,
he and an assisting officer had responded to a call from an unknown person regarding
a domestic disturbance involving parolee.  The officers interviewed parolee’s
mother and sister after arriving at the scene.  The sister told the officer
that parolee had grabbed the mother by the neck and pushed her.  The officer
also testified that he had directly observed some scratches on the mother’s
neck, but this observation was not included in his police report describing the
incident.  On cross-examination, the officer stated, “I’m pretty sure
she had marks.”  The officer did not have his signed arrest report and
notarized statement on hand to refresh his memory during his testimony.  These
documents were, however, contained in the record considered by the Board. 

¶
5.            
The Board also received an arrest report from an assisting officer, which
was similar to the arresting officer’s report but more detailed.  According to
this report, the sister was yelling at parolee when the officers arrived on scene,
and she shouted that parolee had just hit their mother.  Parolee began running
down the block and was then detained.  The sister claimed that parolee had
called to ask for her help moving him and his girlfriend out of their mother’s
house.  During the move, parolee allegedly made derogatory remarks toward the
mother, and the sister demanded that he stop.  The sister explained that the mother
then approached parolee’s girlfriend and confronted her about parolee’s past
actions.  Parolee then allegedly grabbed his mother by the throat and pushed her
against a car.  The assisting officer also interviewed the mother, whose story
was substantially similar to the sister’s.  Although the report states that the
mother mentioned that parolee had left scratches and redness on her neck, the
assisting officer did not mention in the report any personal observations that
would verify her statements.  

¶
6.            
Finally, the Board received testimony from parolee.  Parolee testified
that on the day in question, he was in the process of moving out of his
mother’s residence.  He stated that he was having “a little discussion” with
his mother when “somebody called the police officers.”  He denied touching his
mother. 

¶
7.            
Parolee was arrested and arraigned on assault charges, but the charges
were dismissed one week later at the request of his mother, who also asserted
her Fifth Amendment privilege.  Nevertheless, the Board concluded that there
was sufficient evidence to find a violation by a preponderance of the evidence. 


¶
8.            
Parolee again appealed to the superior court, challenging the second
hearing on the grounds that the Board relied on information that was alleged to
be “innuendo,” and therefore not admissible.  He further renewed his objection
that the Board’s reliance on the officers’ affidavits violated his “Fourteenth
Amendment due-process rights to confront adverse witnesses because [they are]
hearsay.”    

¶
9.            
In response to parolee’s challenges, the court noted that despite the
mother’s and sister’s alleged complaints to the police, these witnesses did not
testify at either revocation hearing.  The attorney for the Board argued that
“the department doesn’t have subpoena power in Massachusetts . . . [s]o
therefore, they’re allowed to use these hearsay statements.”  The court
responded that, regardless of the hearsay evidence, the officers should have
been looking at the scene of the incident for evidence “that would indicate a
physical confrontation.”  The court emphasized that none of the officers at the
scene “verified” the witnesses’ hearsay testimony regarding scratches on the
mother’s neck “by personal observation” in their police affidavits.  The court
opined that “that if [the mother’s] neck was red and there were scratches,
police officer could easily verify it and say I observed the redness and the
scratches on the neck.”[1]
 Moreover, the court expressed doubt regarding the arresting officer’s
credibility during the revocation hearing, stating that “[h]e appeared not to
have good recall, or decent evidence.  He said he thought there were scratches
on the back of . . . the mother’s neck, but he was wishy-washy
on cross-examination as to . . . whether or not that was
something that he actually remembered or not.”  Finally, the court noted that parolee
was never convicted and, in fact, the case was dismissed one week later. 

¶
10.        
The court concluded that without the mother’s and sister’s testimony,
there was “no way to judge their credibility.”  Consequently, there was a “very
significant gap in [the] burden of proof,” leaving the court to rely on hearsay
evidence.  And to the extent that the arresting officer verified the mother’s
complaint by claiming that he observed the scratches on her neck, the court
found that he vacillated in his testimony.  Given these considerations, the
court found that, based on the evidence, the State did not prove the alleged
parole violations by a preponderance of the evidence.  The court stated, “[I]f
it’s fifty-fifty, it’s fairly close but by preponderance of the evidence, the
scales weighing equal, I can’t find that there’s a violation.” 

¶
11.        
The State appeals the court’s decision, arguing that the court erred in
(1) weighing the evidence and assessing witness credibility when it was
reviewing the Board’s decision, and (2) concluding that the parole violation
was not established by a preponderance of the evidence.  

I.

¶
12.        
As an initial matter, we address parolee’s argument that the appeal in
this case was untimely.  Under Vermont Rule of Appellate Procedure 4(a), an
appeal must be filed within thirty days of the date of entry of the judgment
appealed from.  Parolee asserts that the final judgment was the court’s
February 7, 2013 order issued at parolee’s Vermont Rule of Civil Procedure 75
hearing, which reversed the Board’s decision, required a new parole plan, and
ordered a status conference in two weeks.  Because the State’s appeal, filed
April 8, 2013, was more than thirty days after the court’s order, parolee
asserts that the appeal should be dismissed as untimely.  

¶
13.        
We conclude that the court’s February 7 order was interlocutory, not
final.  “To be final and appealable an order must end litigation on the merits
or conclusively determine the rights of the parties, leaving nothing for the
court to do but execute the judgment.”  In re Burlington Bagel Bakery, Inc.,
150 Vt. 20, 21, 549 A.2d 1044, 1045 (1988)
(quotation omitted).  Here, the trial court did not conclusively determine the
parties’ rights and liabilities in its decision.  To the contrary, at the
hearing the court expressed concern that parolee needed to receive “an
appropriate plan” before being released, including a plan for “appropriate
housing [and] appropriate living circumstances.”  The court ultimately
ordered that a parole plan be developed and set a status conference for two
weeks later.  After the Board set new conditions for parolee, the State filed a
request for final judgment on February 28, 2013, “for the purposes of
determining whether to appeal.”  Following a status conference on March 28,
2013, the court issued its final judgment.  The State appealed on April 9,
2013.  

¶
14.        
Parolee cites Bridge v. U.S. Parole Commission, 981 F.2d 97 (3d
Cir. 1992), for the proposition that a trial court’s order granting a parolee’s
habeas corpus petition is a final order for the purposes of appealability. 
However, that case is distinguishable.  The federal district court in that case
reversed the U.S. Parole Commission’s finding regarding the parolee’s offense
level and ordered the Commission to place the parolee in a different offense
severity level.  Id. at 100.  The court then ordered the clerk to mark
the matter closed.  Id. at 102.  In that case, then, the court’s order
completely resolved the rights and liabilities of the parties concerning the
habeas corpus petition.  Here, the court’s order did not resolve these issues
and in fact expressly contemplated further proceedings in order to resolve
them.  Therefore, the court’s February 7, 2013 order was not final.  Rather,
final judgment was not granted until March 28, 2013, and the appeal was timely.

II.

¶ 15.        
Next, we address the State’s argument that, in its review of the
Board’s proceeding, the trial court improperly evaluated the weight of the
evidence and assessed the credibility of the witnesses, in essence substituting
its judgment for that of the fact-finder, the Board.  Whether the trial court
applied the proper standard of review of an agency’s decision is a legal
question which we review de novo.  Rhoades Salvage/ABC Metals v. Town of
Milton Selectboard, 2010 VT 82, ¶ 6, 188 Vt. 629, 9 A.3d 685 (mem.).  

¶ 16.        
Our precedent regarding court review of the sufficiency of the
evidence in agency adjudications is clear: a court must apply particular
deference to the agency’s fact-finding, and cannot substitute its judgment for
that of the agency.  “[I]n reviewing the sufficiency
of the evidence supporting quasi-judicial decisions under Rule 75, we determine only whether there is any competent evidence
to justify the adjudication.”  Rouleau v.
Williamstown Sch. Bd., 2005 VT 131, ¶ 4, 179 Vt. 576, 892 A.2d 223 (mem.)
(quotations omitted).  As this Court recently explained: 

  [Rule
75] review is confined to questions of law and encompasses the consideration of
evidentiary points only insofar as they may be examined to determine whether there
is any competent evidence to justify the adjudication, much as in the case of a
motion for a directed verdict.  Discretionary rulings may be set aside only for
abuse. . . . Under the deferential standard of review
accorded administrative and quasi-judicial bodies . . . it
is not for the superior court to independently weigh the evidence to make its
own factual findings. Rather, the superior court on a Rule 75 appeal must
uphold factual findings if any credible evidence supports the conclusion by the
appropriate standard. 

 

Turnley
v. Town of Vernon, 2013 VT 42, ¶ 11, ___ Vt. ___, 71 A.3d 1246 (citations
and quotations omitted).  Although our decisions in Rouleau and Turnley
addressed court review of school board and town decisions, respectively, this
deferential standard as to findings of fact can be found throughout our cases
dealing with similar statutory schemes.  See Herring v. Gorczyk, 173 Vt.
240, 243, 789 A.2d 955, 958 (2001) (“On judicial review of the sufficiency of
evidence at a prison disciplinary hearing, the hearing officer’s final
determination must be upheld if it is supported by some evidence in the
record.” (quotation omitted)); Favreau v. Dep’t of Emp’t and Training,
156 Vt. 572, 577, 594 A.2d 440, 443 (1991) (holding in appeal from Employment
Security Board that “[o]ur function on appeal is not to weigh the evidence anew
as a trier of fact but to determine if the Board’s findings and conclusions are
supported by credible evidence”); Hall v. Dep’t of Soc. Welfare,
153 Vt. 479, 486-87, 572 A.2d 1342, 1346 (1990) (holding in appeal from Human
Services Board that “[t]his Court will set aside the clearly erroneous findings
of an administrative board, but where the record contains any credible evidence to fairly
and reasonably support the findings, the board’s decision will stand”); In
re Troyse, 142 Vt. 612, 616, 460 A.2d 469, 471-72 (1983) (holding in appeal
from Labor Relations Board that “administrative findings shall not be set aside
unless clearly erroneous, and they will not be
so found if there is any credible evidence fairly and reasonably supporting
them”).

¶
17.        
Therefore, in reviewing the Board’s factual findings, the trial court
cannot substitute its judgment for that of the fact-finder in assessing witness
credibility, or in assessing the weight of the evidence.  See Turnley, 2013 VT 42,
¶ 11; Rouleau, 2005 VT 131,
¶ 4; see also Lewis v. Brown, No. 10-cv-0796(MAT), 2011 WL
6148938, at *5 (W.D.N.Y. Dec. 12, 2011) (explaining that in the analogous
federal parole system, “[t]he proper weight to be accorded to the evidence and
the credibility of the witnesses are determinations for the factfinder and are
not grounds for reversal, even on direct appeal”).  

¶
18.        
However, deference to the Board’s factual findings and discretionary
decision-making does not disturb the ability of courts to review matters within
their purview.  Proceedings before the Board inevitably invoke questions beyond
its expertise.  Constitutional questions, including whether the parolee’s due
process rights were met, often arise.  These issues dovetail with evidentiary
issues, such as the admissibility of hearsay evidence.  The Board’s expertise is
limited to determining whether an offender is likely to lead a law-abiding life,
see 28 V.S.A. § 502a; it lacks expertise in constitutional and evidence
law.  Accordingly, we have developed separate standards that enable courts to
review these questions.  See, e.g., Herring, 173 Vt. at 243-44, 789 A.2d
at 958-59 (holding that in prison disciplinary proceeding, testimony from
confidential informants must have indicia of reliability to be admissible); Relation v. Vt. Parole Bd., 163 Vt. 534, 538, 660 A.2d 318, 320 (1995)
(reviewing de novo Board’s statutory burden of proof determination and holding
that Vermont Constitution requires Board to establish parole violation by
preponderance of the evidence); Watker v. Vt. Parole Bd., 157 Vt. 72, 76-77,
596 A.2d 1277, 1280 (1991) (holding that hearsay evidence must be reliable to
be admissible in parole revocation proceeding).  

¶
19.        
We now address the trial court’s decisions in this case.  Although the
court had the authority to ensure that good cause existed to deny parolee’s
confrontation rights, State v. Decoteau, 2007 VT 94, ¶ 12, 182 Vt.
433, 940 A.2d 661, it could not make credibility judgments or weigh the
evidence.  See Turnley, 2013 VT 42, ¶ 11 (“[I]t is not for the superior court to independently weigh
the evidence to make its own factual findings.”).  Accordingly, we
conclude that the court’s reasoning, which evaluated the evidence non-deferentially
under a preponderance of the evidence test, did not comply with the standard
that factual findings must be upheld if supported by “any credible evidence.”  Id.

¶
20.        
That does not, however, end the inquiry.  Unlike the factual findings or
discretionary decisions of the Board, whether the evidence at hearing met
appropriate standards for admissibility is a question of law that the court
reviews de novo.   See State v. Brooks, 2004 VT 88, ¶¶ 8, 9-17, 177
Vt. 161, 861 A.2d 1096 (holding that administrative body with “no special expertise”
in jurisdictional question did not warrant “additional deference” as to that
question, and consequently deferring to the body’s findings of fact but
reviewing de novo its legal conclusions); see also In
re Diel, 158 Vt. 549, 551, 614 A.2d 1223,
1225 (1992) (noting that issues of due process were outside of the Human
Services Board’s expertise).  Therefore, the alleged deprivation of
parolee’s constitutional rights may provide an alternate ground to affirm the
trial court’s ruling.  In re Handy, 171 Vt. 336, 343, 764 A.2d 1226, 1234 (2000) (“We will not reverse a lower court’s decision if the record
before us discloses any legal ground which would justify the result.”
(quotation omitted)). 

¶
21.        
A parolee is entitled to due process protections under the Fourteenth
Amendment and is therefore afforded the right to confront adverse witnesses.  Morrissey
v. Brewer, 408 U.S. 471, 489 (1972).  Hearsay is thus inadmissible in these
proceedings unless the hearing officer specifically finds good cause for not
requiring confrontation.  U.S. v. Comito, 177 F.3d 1166, 1170 (9th Cir. 1999) (“Under Morrissey, every releasee [including parolees]
is guaranteed the right to confront and cross-examine adverse witnesses at a
revocation hearing, unless the government shows good cause for not producing
the witnesses.”).  In State v. Austin, we recognized this
requirement, holding that “a trial court must make an explicit finding, and
must state its reasons on the record, whether there is good cause for dispensing
with the probationer’s confrontation right and admitting hearsay into
evidence.”[2]
 165 Vt. 389, 396, 685 A.2d 1076, 1081 (1996).  This standard is equally
applicable to the parole revocation context.  See Morrissey, 408 U.S. at
489 (extending due process protections to parole revocation).  

¶
22.        
“Although we have not explicitly outlined the elements
of good cause . . . the reliability of the evidence is a
key factor.”  Decoteau, 2007 VT 94, ¶ 12; see also Austin, 165
Vt. at 396, 685 A.2d at 1081 (explaining that an “important factor in the
court’s determination of good cause is the reliability of the evidence offered
by the State, particularly where that evidence bears traditional indicia of
reliability”).  To determine reliability, the reviewing court must “analyze the
quality¾the underlying reliability and
probative value—of the hearsay presented.  A reviewing court must evaluate the
weight each item of hearsay should receive according to the item’s
truthfulness, reasonableness, and credibility.”  Watker, 157 Vt. at
76-77, 596 A.2d at 1280 (citation and quotation omitted).  

¶
23.        
Here, the State argued that there was good cause because the witnesses
to the incident were in Massachusetts and did not respond to the parole
officer’s multiple attempts to procure them.  According to the parole officer,
parolee’s mother told the parole officer that she would attend the hearing in
person, but ultimately failed to attend without communicating any reason for
her absence.  Further, parolee’s sister flatly refused to attend the hearing.  The
parole officer did not attempt to procure “conventional substitutes for live
testimony,” such as affidavits from the complaining witnesses, parolee’s mother
and sister.  Austin, 165 Vt. at 397, 685 A.2d at 1081 (quotation omitted). 
Rather, the Board relied on the testimony of parolee and the arresting officer,
and the police affidavits of the arresting and assisting officers.  Because
neither of the officers witnessed the incident, their testimony was based
almost entirely on hearsay, with the exception of the arresting officer’s
possible observation of the marks on the mother’s neck. 

¶
24.        
We hold that there was inadequate good cause for denial of confrontation
in the Board hearing, because the hearsay evidence received by the Board was
unreliable.[3] 
See id. at 397, 685 A.2d at 1082 (concluding that police affidavit
lacked “traditional indicia of reliability”).  First, although “police reports
may be demonstrably reliable evidence of the fact that an arrest was made, they
are significantly less reliable evidence of whether the allegations of criminal
conduct they contain are true.”  Decoteau, 2007 VT 94, ¶ 17
(quoting United States v. Bell, 785 F.2d 640, 644 (8th Cir. 1986)). 
This is because the relationship between police officers and those they arrest
is personal and adversarial, and thus subject to inferences and conclusions.  Austin,
165 Vt. at 397, 685 A.2d at 1081-82; see also Decoteau, 2007 VT 94,
¶ 14 (outlining considerations to assess reliability, including whether
hearsay contains conclusions that should be subject to cross-examination).  

¶
25.        
Further, the police affidavits here lack the redeeming level of
specificity and detail of the police affidavits examined in Watker,
which described in detail the victim’s injuries and the circumstances in which
the police found the victims.  157 Vt. at 73, 596 A.2d at 1278.  In particular,
we share the trial court’s concern that neither the arresting nor assisting
officer’s police affidavits contained their personal verification of the
scratches on the mother’s neck, an observation that the arresting officer later
testified to in the revocation hearing.  The omission of such a crucial detail
brings the reliability of the affidavits as a whole into question, especially
because this observation was the only direct evidence offered to corroborate
the hearsay evidence.  See Comito, 177 F.3d at 1171 (holding that the
more important particular evidence is to a finding and the more its reliability
is in question, the greater the interest in testing it through confrontation);
see also Decoteau, 2007 VT 94, ¶ 14 (noting that hearsay evidence
is “more reliable if it contains a greater level of specific detail”).

¶
26.        
Second, we find the Board’s admission of statements made by parolee’s
mother and sister to the officers at the scene, through both the police
affidavits and the arresting officer’s testimony at the hearing, even more
problematic than its reliance on the police affidavits.  First, these
statements were oral; the officers never obtained a sworn statement of any kind
from either witness.  Second, these witnesses refused to testify at the hearing. 
In particular, parolee’s mother, the alleged victim, exerted her Fifth
Amendment right against self-incrimination rather than testify against parolee. 
Consequently, the criminal charge against parolee based on this incident was
dismissed.  Given these reasons for the unavailability of the declarants, and
the importance of their statements to the Board’s finding of a violation, we
conclude that the mother’s and sister’s statements are unreliable.

¶ 27.        
Without this unreliable hearsay, the only evidence the Board
could have properly relied upon was the arresting officer’s observations of
redness and scratches on the mother’s neck.  In the absence of more context, it
would be impossible for the Board to determine where the scratches came from,
or how the incident occurred.  Accordingly, the officer’s observation, in and
of itself, does not constitute “competent evidence to
justify the adjudication.”  Rouleau, 2005 VT 131,
¶ 4.  

¶
28.        
Consequently, although we reject the non-deferential standard of review
applied by the trial court, we nonetheless affirm because the hearsay evidence
relied on by the Board was unreliable, and the remaining evidence was not
sufficiently credible to support the Board’s findings of fact.

Affirmed.


  
  
 
 
  
 
 
 FOR THE
 COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Chief Justice
 
  





[1]
 At first, the court incorrectly stated that the arresting officer never
testified in the hearing that he saw the scratches on the neck, and was corrected
by the Board’s attorney.





[2] 
The State argues that “whether good cause exists is a mixed question of fact
and law” left to the discretion of the fact-finder.  However, none of the cases
offered by the State arise in the context of an administrative body’s decision
to deny a party’s confrontation right.  Thus, we find the deferential standard
urged by the State to be unavailing.  Rather, we view the question of whether
good cause existed to deny confrontation rights as one of law to be reviewed de
novo.   

 

 





[3] 
We note that many of the trial court’s findings, though framed as factual
determinations rather than conclusions regarding parolee’s confrontation rights,
concur substantially with our concerns articulated here.